IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| | : Case No. CR2-06-129 |
| v. | : JUDGE ALGENON L. MARBLEY |
| | : Magistrate Judge Terence Kemp |
| LANCE K. POULSEN, et al., | : |
| Defendants. | : |

## OPINION AND ORDER

### I. INTRODUCTION

Defendants Donald H. Ayers, Lance K. Poulsen, Rebecca S. Parrett, James E. Dierker, Roger Faulkenberry, Randolph Speer, and James K. Happ (collectively, "Defendants") move to suppress the testimony of certain Government witnesses on the grounds that the Government has failed to comply with its expert disclosure obligations under Federal Rule of Criminal Procedure 16(a)(1)(G). For the reasons set forth below, as well as those discussed at the hearing on Defendants' motion, the Court **GRANTS** Defendants' motion to the extent that the Government is ordered to supplement the disclosures it has already made.

### II. BACKGROUND

By prior order of the Court, on August 31, 2007, the Government filed a "Notice Regarding Expert Disclosures" ("Notice"), stating that it does not intend to call any expert witnesses at trial, but that it does intend to call thirteen fact witnesses that fall into three categories: (1) witnesses affiliated with the institutional investors that bought NCFE's bonds and

1

sustained significant losses when NCFE collapsed; (2) witnesses from Crowe Chizek & Company, an accounting firm that performed audits of the NPF VI and NPF XII securitization programs; and (3) witnesses from Fitch Rating Agency, which downgraded NCFE's "triple A" bond rating in the summer of 2002. The Government insisted that it "does not intend to elicit any expert opinion testimony" from these thirteen witnesses and that therefore it was not obligated to comply with the expert disclosure requirements of Federal Rule of Criminal Procedure 16(a)(1)(G). Nonetheless, "out of an abundance of caution," the Government provided Defendants with (1) the written memoranda—generally, FBI Form 302s—summarizing the Government's interviews with each witness, and (2) the witness's grand jury testimony, if he or she testified before the grand jury. The Government also produced to Defendants a chart identifying on what pages of the interview memoranda and/or grand jury testimony Defendants could find information about the witnesses' opinions, to the extent they gave them, their bases and reasons for those opinions, and their qualifications.

On September 24, 2007, Defendants moved to suppress the testimony of the Government's witnesses on the grounds that the witnesses are expert witnesses, not fact witnesses as the Government maintains, and that the Government's disclosures were inadequate under Rule 16(a)(1)(G).

### III. LEGAL STANDARDS

Rule 16(a)(1)(G) requires, in part, that "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use" under Federal Rule of Evidence 702 in its case-in-chief at trial. The "written summary" must set forth "the witness's opinions, the bases and reasons for those opinions, and the witness's

2

qualifications." Fed. R. Crim. P. 16(a)(1)(G). The Rule exempts *lay* opinion testimony from its requirements. *Expert* opinion testimony, to which the Rule applies, is defined as testimony based upon "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702.

## IV. ANALYSIS

As the Court explained at the hearing on Defendants' motion, the Court finds that the Government's witnesses have the characteristics of both fact witnesses and expert witnesses, and that therefore, under the recent Sixth Circuit decision in *United States v. White*, 492 F.3d 380 (6th Cir. 2007), the Government must comply with Rule 16(a)(1)(G).

The Court notes that even Defendants agree that it appears as though the Government will elicit significant fact testimony from its witnesses. For example, most of the Government's witnesses are employees or former employees of institutional investors who were allegedly defrauded by NCFE. Based on the interview memoranda and grand jury testimony, these witnesses can be expected to testify about how they came to learn about NCFE; what representations NCFE executives made to them; why they decided to invest in NCFE's bonds; how they monitored their investments; what events occurred between May and October 2002 that signaled to them that NCFE might be in trouble; and what steps they took to protect their investments and investigate the nature and source of the company's apparent decline.

At the same time, the Government's witnesses possess specialized knowledge about the asset-backed securities industry that goes beyond that of the average layperson. In their interview statements and grand jury testimony, the witnesses discuss, among other things, what asset-backed securities are and how they work; how NCFE's asset-backed securities, based on health-care receivables, differed from other asset-backed securities offered in the market; what "rating

3

agencies" do and why they are important to the asset-backed securities industry; what underwriters do; and what it means to conduct "surveillance" of bonds. In addition, the witnesses defined and elaborated upon such financial terms of art as "reserves," "credit enhancements," "bankruptcy remote," "true sale," "turn-over rate," "indenture," "private placement memoranda," "future receivable," "static pool" versus "dynamic pool" analysis, "eligible account receivable," "determination date," "provider concentration" and "haircut," among others.

Simply put, the Government's witnesses have the qualities of both fact witnesses under Rule 701 and expert witnesses under Rule 702. In these circumstances, *White* instructs that the Government must abide by Rule 16(a)(1)(G) and provide Defendants with written summaries of the expert opinion testimony it intends to elicit at trial, as well as the bases and reasons underlying those opinions, and the witnesses' qualifications.

In *White*, the district court allowed the Government's witnesses—Medicare auditors—to testify as lay witnesses. The Sixth Circuit held that the witnesses gave a mixture of fact and expert opinion testimony, and that therefore the government should have complied with Rule 16(a)(1)(G). On the one hand, the Sixth Circuit concluded that "[e]ach challenged witness had personal knowledge of facts relevant to the case," and that therefore "[m]uch of their testimony fits squarely within the proper bounds of Rule 701 . . . ." 492 F.3d at 403. But, the Court also reasoned that at other points in their testimony, the witnesses "relied to a significant degree on specialized knowledge acquired over years of experience as Medicare auditors in testifying to the structure and procedures inherent in the Medicare program, as well as their understanding of various terms." *Id.* at 403-404. These concepts and terms—such as the structure of the Medicare

4

program generally, Medicare regulations, the process for paying claims, the work the witnesses performed as "Fiscal Intermediaries," and the meaning of various Medicare terms such as "reasonable cost," and "related-party transaction," etc.—were beyond the knowledge of an average lay person, held the Sixth Circuit, and thus constituted expert testimony within the scope of Rule 702. *Id.* at 399-400; *United States v. Garcia*, 413 F.3d 201, 216 (2d Cir. 2005) (holding that a law-enforcement officer could not testify as a lay witness where his "reasoning process depended . . . on his specialized training and experience" in narcotics trafficking).

Having concluded that the Government must comply with Rule 16(a)(1)(G), the Court must now address whether the Government has done so. There can be no doubt that the Government's disclosures here far surpass those deemed deficient in *White*. In *White*, the Government provided the defendants with only the witnesses' titles, employers, and contact information, and a brief statement summarizing the witnesses' expected testimony. Here, by contrast, the Government has produced multiple pages of interview summaries for each witness and, if applicable, the witness's complete grand jury testimony.[1] *See United States v. Shepard*,

---

[1] Defendants do not dispute that the Government has produced the following information for each of its witnesses:
  1. *Stefanie D. Evans of Pacific Investment Management Group ("PIMCO")*: one FBI Form 302 (interview summary) containing 8 pages; one grand jury transcript containing 38 pages.
  2. *Daniel J. Ivascyn of PIMCO*: one FBI Form 302 containing 10 pages; one grand jury transcript containing 72 pages.
  3. *Terence Glomski of Lincoln Capital Fixed Income Management ("Lincoln")*: one FBI Form 302 containing 6 pages.
  4. *Richard Schneider of Lincoln*: one FBI Form 302 containing 5 pages.
  5. *Amy D. Boothe of Alliance Capital Fixed Income ("Alliance")*: one FBI Form 302 containing 7 pages; one grand jury transcript containing 119 pages.
  6. *Mary N. Gordon of Alliance*: one FBI Form 302 containing 11 pages.
  7. *Julio M. Maceira of Illinois Institutional Investors*: one Postal Inspector memorandum of interview containing 3 pages.

462 F.3d 847, 866 (8th Cir. 2006) (rejecting the defendant's Rule 16(a)(1)(G) challenge on appeal where, although the Government did not notify the defendant that it intended to offer a police officer as an expert witness and did not provide a written summary of the officer's testimony, the government "did provide the defense with copies of [the officer's] prior, similar trial testimony"). Despite the significance and substance of what the Government has already disclosed, the Court finds that the Government is still required to provide written summaries of the expert opinion testimony its witnesses will give at trial, and the bases and reasons underlying those opinions. As it is, the materials produced by the Government do not adequately set forth which expert opinions the Government intends to elicit at trial, or the bases and reasons therefor. As to the issue of qualifications, the interview memoranda and grand jury testimony provide information about the witnesses' educational and employment history, but this information is now a few years old. The Government therefore must provide Defendants with current resumés for each of its aforementioned witnesses.

---

8. *Neil E. Helm of the State of Arizona Treasurer's Office*: one FBI Form 302 containing 6 pages.
9. *John A. Costa of ING Bank ("ING")*: one FBI Form 302 containing 11 pages; one grand jury transcript containing 102 pages.
10. *Robert L. Novick of ING*: one FBI Form 302 containing 14 pages; one grand jury transcript containing 112 pages.
11. *Michael I. Rarick of Crowe Chizek & Co.*: one FBI Form 302 containing 4 pages.
12. *Kevin Healey of Fitch Rating Agency ("Fitch")*: one Postal Inspector memorandum of interview containing 5 pages.
13. *Brigid Fitzgerald of Fitch*: one Postal Inspector memorandum of interview containing 9 pages.

## V. CONCLUSION

For the reasons described above, Defendants' motion (docket no. 359) is **GRANTED** insofar as the Government is ordered to produce written summaries, in compliance with Rule 16(a)(1)(G), of the expert opinions its witnesses will offer at trial.

**IT IS SO ORDERED.**

                                                  s/Algenon L. Marbley
                                                  **ALGENON L. MARBLEY**
                                                  **United States District Court Judge**

**DATE: November 30, 2007**