**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | |
| Plaintiff, : | |
| : | Case No. CR2-06-129 |
| v. : | JUDGE ALGENON L. MARBLEY |
| : | Magistrate Judge Terence P. Kemp |
| **LANCE K. POULSEN, et al.,** : | |
| : | |
| Defendants. : | |

**ORDER**

**I.  INTRODUCTION**

On November 20, 2007, the Court granted the Government's motion to revoke Defendant Lance K. Poulsen's pretrial release.  Poulsen has moved for reconsideration of that order, arguing primarily that given the complexity and document-intensive nature of this white-collar criminal case, he will be not be able to adequately assist his counsel prepare his defense if forced to remain behind bars prior to trial.  For the reasons described below, the Court **DENIES** Poulsen's motion insofar as the Court concludes that he still has not overcome the rebuttable presumption of detention that applies in his case.  Nonetheless, the Court **ORDERS** the United States Marshal Service to arrange for Poulsen to be re-housed at the Ross County, Ohio Jail, which is better suited than the Franklin County Jail to accommodate Poulsen's need to assist his counsel prepare for trial.  The Court further **ORDERS** the United States Marshal Service to work with the Ross County Jail personnel to institute certain modifications to the terms of Poulsen's detention, as set forth in Part III of this Order.

1

## II.  LEGAL STANDARDS

A motion for reconsideration will be granted only where the moving party demonstrates one of the following: "(1) [a] clear error of law; (2) newly discovered evidence that was not previously available to the parties; or (3) an intervening change in controlling law." *Ward v. Flying J, Inc.*, No. 06-0210, 2007 U.S. Dist. LEXIS 58278, *6-7 (S.D. Ohio Aug. 9, 2007) (citing *GenCorp., Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).  Motions for reconsideration are "not designed to give an unhappy litigant an opportunity to relitigate matters already decided; nor [are they] a substitute for appeal."  *Krantz v. City of Toledo Police Dep't*, No. 03-7325, 2007 U.S. Dist. LEXIS 54171, *2-3 (N.D. Ohio July 26, 2007).

## III.  ANALYSIS

Poulsen advances several arguments in support of his motion for reconsideration.  Most of these were previously considered in detail and rejected by the Court, as reflected in the November 20, 2007 Order, and therefore do not provide grounds for granting Poulsen's motion for reconsideration.  In particular, Poulsen has already been heard on:  (1) his history as a businessman with strong ties to his Florida community; (2) the nature of the obstruction and witness-tampering charges against him (which led to the Government's motion to revoke his pretrial release) and the circumstances giving rise to those charges; (3) his financial wherewithal; and (4) the distinctions between the facts prompting the revocation order in *United States v. LaFontaine*, 210 F.3d 125 (2d Cir. 2000), the leading analogous case, and this case.  The Court therefore declines to revisit its prior order on the basis of any of these issues.

Next, Poulsen seeks to clarify the facts surrounding statements he made to the Court at his arraignment and revocation hearing.  As explained in the Court's prior Order, Poulsen

represented at his arraignment on November 14, 2007, that he worked as the "managing member" of a corporate enterprise in Florida.  At his revocation hearing the next day, the Government confronted Poulsen with a corporate resolution, dated October 26, 2007, severing him from his employment.  In its prior Order, the Court expressed "serious concerns" about whether Poulsen had been truthful when he told the Court at his arraignment that he was actively employed in Florida, and when he insisted at his revocation hearing that he knew nothing about the corporate severance resolution.

Poulsen now argues that he did not make any misstatements to the Court.  He submits an affidavit from his wife, Barbara Poulsen, who testifies that although Poulsen's business partners informed her of their decision to sever ties with him, and emailed to her on October 31, 2007, a copy of one of the corporate resolutions memorializing the severance, it did not "register with [her] that it was necessary to pass this information on to Lance," who was in custody following his arrest on the obstruction and witness-tampering charges.  Barbara Poulsen apparently believed, based on other business dealings she was monitoring for her husband, and despite the language of the severance resolution, that he remained an active member of the partnership.  Further, Ms. Poulsen testified that she was not aware of any other corporate resolutions terminating her husband's memberships in various other business enterprises because these resolutions were not sent to her.  Poulsen therefore argues that he was truthful when he told the Court that he had active employment in Florida because he knew nothing to the contrary.

The Court appreciates Poulsen's efforts to clear up any misconceptions generated by his statements at his arraignment and revocation hearing.  Even so, while the Court took into account its concerns about Poulsen's possible lack of candor, the Court treated his statements as

3

just that, *possible* prevarication, and did not regard them as dispositive of the revocation question. Had the issue of Poulsen's employment status not arisen at all, the record still would have amply supported the Court's finding that Poulsen failed to rebut the presumption of detention. The Court therefore sees no reason to reconsider its prior Order on the basis of the clarifying information Poulsen has now provided.

Poulsen's principal argument is that he cannot adequately assist his counsel prepare for trial unless he is released, and that therefore his Sixth Amendment right to the effective assistance of counsel will be jeopardized if he is compelled to remain in jail. Poulsen contends that owing to the complex financial transactions at the heart of the corporate fraud charges against him, his counsel must rely heavily on him to identify relevant documents out of the millions of pages produced, and explain their importance. According to Poulsen, this means that his counsel must be able to have regular contact with him to obtain his guidance and he, in turn, must be able to review the voluminous discovery in this matter in order to give that guidance. Poulsen also points out that although his prior counsel performed a significant amount of work piecing together the evidence, his new lawyers took on the case only recently, in early December 2007, and therefore must duplicate efforts already expended to become familiar with the case.

The conditions at the Franklin County Jail, says Poulsen, prevent him from working on his case in any meaningful way, and prevent him from having the kind of sustained communication with his counsel that is necessary to advise them. In support, Poulsen has submitted the affidavit of Mr. Mark Barrett, the Chief Deputy of the Franklin County Sheriff's Department, who oversees the Franklin County Jail. Barrett confirms Poulsen's claims about the security and facility restrictions at the Franklin County Jail that make it impossible for Poulsen

to have the level of involvement in the preparation of his defense that he says is necessary. Barrett testifies that inmates are permitted to retain only "a limited amount of paperwork" in their cells between attorney visits and that all paper documents brought into the jail must be inspected for security purposes. Barrett also testifies that there is no guarantee that Poulsen, or any other inmates, can meet with their counsel at pre-designated times because the jail has only three attorney conference rooms that serve all six-hundred inmates. If all the conference rooms are occupied, lawyers and their clients must wait for an opening, or the lawyer may leave and try again later. Further, Barrett testifies that Poulsen cannot meet with his counsel for the extended periods of time that would be needed to review "many boxes of documents" because the jail does not have the resources to assign staff to monitor his whereabouts throughout "shift changes, meal times and periodic inmate counts."

The Court has no doubt that Poulsen's knowledge and experience are indispensable to his counsel's preparation of his defense, and that Poulsen therefore must have an adequate opportunity to confer regularly with them and guide their work. The Court is not convinced, however, that Poulsen's need to be centrally involved in mapping out his defense cannot be comfortably accommodated with appropriate modifications to the terms of his incarceration. If it were otherwise, white-collar criminal defendants like Poulsen could violate the terms of their pretrial release with impunity, never risking detention because they could always invoke their Sixth Amendment rights as an insurmountable constitutional hurdle to sending them to jail. Neither the law generally, nor the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, specifically, countenances such distinctions between white-collar offenders and others. Moreover, while compelling, Poulsen's need for reasonable access to litigation materials and his counsel does

nothing to mitigate the presence in this case of the rebuttable presumption of detention, which even Poulsen has conceded applies in light of his alleged obstruction activities.

In its prior Order, the Court concluded that Poulsen represents "at least some risk" of flight and that there are no conditions of pretrial release which will reasonably ensure that he does not again attempt to manipulate these proceedings. Those findings remain unchanged. In his eagerness to get out of jail, Poulsen proposes numerous and sometimes elaborate safeguards to his release, including house arrest, electronic and GPS monitoring, an increase in the amount of his bond, continuous taping of his telephone and cellphone calls, the installation of a "mobile phone jammer" at his residence to prevent him from making cell phone calls, and installation of a software program on his home computer that captures information about his internet use. Such prophylactics, if observed, would likely make it vastly more difficult for Poulsen to flee or again engage in the obstruction conduct he is accused of committing. Nevertheless, the Court deems them inadequate. Some of Poulsen's suggestions would be unduly burdensome for the Government, such as monitoring his telephone and cellphone calls through a consensual wiretap, and others, like the installation of a "mobile phone jammer," would give Poulsen control over the terms of his release. Pretrial services is not experienced in the operation of "mobile phone jammers," or their efficacy, nor do they have a means of ensuring that such a device is not tampered with.

Accordingly, the Court **DENIES** Poulsen's motion for reconsideration. The Court concludes that Poulsen has not rebutted the statutory presumption of detention that applies in this case, but that a modification to the terms of his confinement is appropriate to enable him to assist his counsel in preparing his defense. The Court therefore **ORDERS** as follows:

1.  The United States Marshal Service shall transport Poulsen to the Ross County Jail (the "Jail") within ten days of the date of this Order.

2.  A room at the Jail (the "Work Room") shall be reserved for Poulsen's use so that, if he wishes, he may work on his case.  Poulsen may use this room up to eight hours a day, seven days a week, between the hours of 8:30 a.m. and 5:30 p.m.  Upon Poulsen's request, Jail guards or other appropriate Jail personnel shall arrange for him to get to and from the Work Room, and shall reasonably accommodate his requests for bathroom breaks and regularly scheduled inmate meals.  When Poulsen requests to go to the Work Room, such requests shall be granted by Jail personnel, provided Poulsen makes the request between the hours of 8:30 a.m. and 5:30 p.m., that he has not incurred any disciplinary infractions requiring the restriction of his movements within the Jail, and that no unusual circumstances exist within the Jail that make it unduly burdensome or unsafe to give Poulsen access to the Work Room.

3.  While in the Work Room, Poulsen may have up to five bankers' boxes of paper documents.  He may also have a rented laptop that he supplies and pays for himself.  Poulsen's counsel shall work with the United States Marshal Service to arrange for the purchase and delivery of a suitable laptop.  The Marshal Service shall take delivery of the laptop directly from the supplier and shall provide it to Poulsen at the Jail.  The laptop shall consist of hardware, operating systems, and software programs to review, search and organize documents, but shall not have any capability of accessing the internet.  The laptop shall be subject to inspection by the Marshal Service and Jail personnel, at any time.

Poulsen may use the laptop to review electronic documents pertaining to this case and to prepare memoranda, notes, and other communications to his lawyers.  Poulsen may have any of

the compact discs, upon which the discovery in this case is maintained, and also may have compact discs for saving information he prepares for his lawyers. At any given time, Poulsen may have in the Work Room a maximum of eight compact discs containing discovery and other information relevant to this case.

    4. Poulsen's criminal counsel may visit him regularly, for purposes of conferring about the litigation, up to eight hours each day. Poulsen's counsel may provide him with additional compact discs containing documents related to the litigation, and also may provide Poulsen with additional boxes of paper documents. However, Poulsen shall be permitted to have only five bankers' boxes of documents at any given time. Poulsen's counsel must comply with all applicable Jail security measures in bringing paper and electronic documents into and out of the Jail.

    5. When Poulsen returns to his cell from the Work Room, he may take a handful of paper documents with him, not to exceed one-half inch in thickness. Use of the laptop will be restricted exclusively to the Work Room and to any attorney conference rooms in which Poulsen may meet with his counsel.

    6. The United States Marshal Service and Jail personnel shall have reasonable flexibility in implementing these modifications, in light of the particular circumstances existing at the Jail.

## IV. CONCLUSION

For the reasons described above, the Court **DENIES** Poulsen's motion for reconsideration (docket no. 427).

**IT IS SO ORDERED.**

    s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATE: January 15, 2007**