**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | |
| **Plaintiff,** : | |
| : | **Case No. CR2-06-129** |
| v. : | **JUDGE ALGENON L. MARBLEY** |
| : | **Magistrate Judge Terence P. Kemp** |
| **LANCE K. POULSEN**, *et al.*, : | |
| : | |
| **Defendants.** : | |

**OPINION AND ORDER**

**I.  INTRODUCTION**

Defendants move to suppress all documents and items seized from NCFE's corporate headquarters in Dublin, Ohio, pursuant to a search warrant signed by the magistrate judge. Defendants also move to compel the Government to disclose the identities of three confidential informants who are referred to in the affidavit underlying the search warrant. For the reasons described below, the Court **DENIES** Defendants' motions.

**II.  BACKGROUND**

On November 16, 2002, the Government applied for a warrant to search NCFE's corporate headquarters. The application identified 6005, 6051, 6075, 6085, and 6135 Memorial Drive, in Dublin, Ohio, as the pertinent addresses. The application sought:

> Any and all records or information created or maintained by National Century Financial Enterprises or its subsidiary corporations relating to the purchase, maintenance, valuation, transfer, sale, assignment, or other ownership interest of account receivables; sellers of account receivables; investors; note holders; banking records; wire transfer records; and reports to investors, note holders or indenture trustees.

An eight-page affidavit of FBI Special Agent Matthew J. Daly accompanied the application. The magistrate judge concluded that the application was supported by probable cause to believe that a crime had been committed and issued the search warrant on November 16, 2002. The FBI executed the warrant the same day and continued its search through approximately November 24.

### III. ANALYSIS

#### A. Defendants' Challenge to the Search Warrant

Defendants now move to suppress all documents and items seized pursuant to the search warrant. Defendants argue: (1) the search warrant was not supported by probable cause; (2) the warrant failed to describe the items to be seized with particularity and was overbroad; and (3) the FBI exceeded the scope of the warrant.

As an initial matter, the Government argues that Defendants do not have standing to maintain their motion. At the hearing on Defendants' motion, the Court acknowledged that whether Defendants have standing is a close question. Nonetheless, the Court provisionally resolved the standing question in favor of Defendants to allow them to argue that they are entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge whether the search warrant was supported by probable cause. As described below, the Court concludes that Defendants have not satisfied their burden to obtain a *Franks* hearing, nor have they otherwise successfully challenged the warrant. Therefore, the Court denies Defendants' motion on the merits and does not re-visit the standing question.

    1. <u>Whether the Search Warrant Was Supported by Probable Cause</u>

Defendants proffer two arguments in support of their contention that the search warrant

was not supported by probable cause. First, Defendants attack Agent Daly's affidavit in support of the warrant application, contending that Agent Daly omitted material facts, and that when those omissions are considered along with the allegations set forth in the affidavit, probable cause does not exist. Defendants say that they are entitled to a *Franks* hearing to test the validity of the affidavit. Second, Defendants argue that probable cause is lacking because Agent Daly relied on three confidential informants in describing the alleged criminal activity at NCFE and provided neither sufficient assurances of the informants' reliability, nor independent corroboration of the alleged wrongdoing. Neither of Defendants' arguments has merit.

>  *a. Defendants Have Not Satisfied the Standard for Obtaining a <u>Franks</u> Hearing*

A defendant is entitled to a *Franks* hearing if he can make "a substantial preliminary showing that (1) a false statement, (2) knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit, and (3) the allegedly false statement is necessary to the finding of probable cause." *United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002). "False statements" may also include material omissions for *Franks* purposes. *United States v. Castillo*, 287 F.3d 21, 25 (1st Cir. 2002). However, "affidavits with potentially material omissions . . . are much less likely to merit a *Franks* hearing than are affidavits including allegedly false statements." *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998). Indeed, charges of material omissions will merit a *Franks* hearing only in "rare instances." *Id.* This is so because otherwise law-enforcement officers will be subjected to endless second-guessing about information they could or should have included. *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997) (explaining that the higher burden on defendants alleging omissions is necessary because "an allegation of omission potentially opens officers to endless conjecture about

3

investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit"). If a defendant satisfies the initial hurdle of establishing that the affiant intentionally or recklessly made material omissions, then the court considers the original affidavit and the omitted portions to determine whether probable cause still exists. *Hale v. Kent*, 396 F.3d 721, 726 (6th Cir. 2005). At this stage, the court must find that the omissions were not just relevant to a proper probable cause determination, but that they were essential to that determination. *Reivich*, 793 F.2d at 961.

Defendants here base their request for a *Franks* hearing on what they claim are material omissions in Agent Daly's affidavit. Defendants claim that inclusion of the following facts would have negated a finding of probable cause: (1) the documents governing NCFE's securities, including the Master Indentures and the Sales and Subservicing Agreements, permitted the business activities complained of; (2) the data on NCFE's AS400 computer system belied the contention that NCFE falsely told investors that it had accounts receivable assets that it did not actually have; (3) advancing funding to healthcare providers without getting any accounts receivable immediately in return was a common practice within the healthcare securitization industry and was authorized by NCFE's securities documents; and (4) the trustees of NCFE's NPF VI and NPF XII securities portfolios had regularly signed off on transfers between the two accounts so that NCFE would satisfy minimum asset balances on certain "test" dates.

The Government does not dispute, nor could it, that these factual allegations are not included in Agent Daly's affidavit. But merely identifying omissions is not enough to satisfy *Franks's* "substantial preliminary showing" standard. Defendants also bear the high burden of

4

establishing that Agent Daly intentionally or recklessly omitted these facts in order to mislead the magistrate judge. Defendants do not even attempt to make such a showing. They nowhere allege that Agent Daly acted with the requisite state of mind, let alone offer competent proof of the same. *See Franks*, 438 U.S. at 131-32 (stating that a defendant's "allegations must be accompanied by an offer of proof," such as "[a]ffidavits or sworn or otherwise reliable statements of witnesses"). At one point, Defendants even undercut their claim to a *Franks* hearing by arguing that even if the omissions were made "inadvertently or due to a lack of knowledge," probable cause does not exist. Of course, inadvertence or lack of knowledge on the part of the affiant is not enough; the defendant must instead adduce evidence that the affiant acted intentionally or with reckless indifference in failing to include the omitted material. *See Franks*, 438 U.S. at 171-72 ("Allegations of negligence or innocent mistake are insufficient.").

Accordingly, Defendants' request for a *Franks* hearing to test the validity of Agent Daly's affidavit is **DENIED**.

  b. *Probable Cause is Not Lacking Just Because Agent Daly Relied on Confidential Informants*

Defendants' second probable cause challenge is predicated on the claim that Agent Daly's affidavit lacked necessary facts establishing the reliability of the hearsay information provided by three confidential informants.

A magistrate judge's determination of probable cause is afforded "great deference" and should be set aside only if arbitrary. *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1996). Affidavits may consist of information provided by confidential informants and anonymous tipsters, but in assessing probable cause, "a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the

5

circumstances for evaluating the impact of that information." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). There are two principal ways in which the reviewing court may satisfy itself as to the reliability of the information provided by confidential informants. First, the law-enforcement officer who submits the affidavit may include facts describing the informant's positive track record based on prior experiences with him or her. *Id.* at 820; *United States v. Jackson*, 470 F.3d 299 (6th Cir. 2006). Second, the affiant may provide details of his/her own independent assessment, which corroborate the allegations of the informant. *Jackson*, 470 F.3d at 299; *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005) ("The affidavit could state that police corroborated significant parts of the informant's story. Or the affiant could attest with some detail that the informant provided reliable information in the past."). The Sixth Circuit has cautioned, however, that the facts establishing an informant's reliability "need not take any particular form," *Jackson*, 470 F.3d at 307 (quoting *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000)), and affiants are not restricted to either the "past track record" or "independent corroboration" routes.

Here, the Court declines to disturb the magistrate judge's probable cause determination.

Agent Daly's confidential informants are identified only as "Source 1," "Source 2," and "Source 3." Source 1 is described as someone "i[n] a position to have knowledge regarding NCFE's operations." Source 2 and Source 3 are described as individuals "who ha[d] been on NCFE's premises as of November 15, 2002 reviewing business documents and computer data relating to NCFE, NPF XII, and NPF VI."

Agent Daly does not aver that he had any prior experiences with the confidential informants that proved auspicious, nor does he state that he did anything to verify the

informants' accounts of wrongdoing.  Nonetheless, the magistrate judge's probable cause finding was not infirm because the informants relayed to Agent Daly detailed information about their first-hand observations of what NCFE's documents and computer records revealed and because the informants' stories corroborated one another.  *See McCraven*, 401 F.3d at 697 (stating that "a detailed description of what the informant observed first-hand" may be sufficient to ensure reliability); *United States v. Lancaster*, 145 F. App'x 508, 511 (6th Cir. 2005) (stating that "consistency between the reports of two informants could be sufficient corroboration to support a finding of probable cause").

As an initial matter, all three informants provided detailed information about the inner-workings of NCFE.  Source 1, a person "i[n] a position to have knowledge regarding NCFE's operations," explained to Agent Daly (1) NCFE's business model; (2) the terms under which NCFE purchased accounts receivable from healthcare providers, including how much NCFE paid the providers, and how it held the money owed to the providers; (3) how NCFE set up subsidiaries, NPF VI and NPF XII, to sell bonds to investors in order to raise funds to purchase the accounts receivable; and (4) how NCFE received and processed payments on the accounts receivables.

Source 2, who had reviewed NCFE's business documents and computer data at NCFE's headquarters, relayed the following: (1) how NCFE inflated the assets in NPF VI and NPF XII in monthly investor reports to make it appear as though these accounts had the required minimum balances; (2) how NCFE regularly transferred money between the two accounts to disguise its misappropriation of investor funds; and (3) how NCFE attempted to make such a transfer at the

end of September 2002, but that NCFE's documents revealed that the transfer was not supported by the purchase of any accounts receivable.

Source 3, like Source 2, a person who had reviewed documents and records at NCFE's headquarters, and who also had spoken with NCFE Chief Financial Officer Randy Speer, provided the following information: (1) $1.37 billion of the $2.2 billion that NCFE had booked as accounts receivable, were not really accounts receivable, but advances to healthcare providers for potential receivables; and (2) the advancing of funds to the healthcare providers without getting receivables in return violated NCFE's agreement with its investors and resulted in a substantial loss of investment dollars.

The allegations of the three confidential informants were based on their personal knowledge and their review of NCFE's business records.  Moreover, the informants were able to give Agent Daly both extensive and precise information about NCFE's operations and how it perpetrated the alleged fraud.  This was sufficient to dispel any concerns about the reliability of the informants' information.

In addition, the informants' stories overlapped; all three agreed on the basic premise of NCFE's business model (the buying of healthcare accounts receivable); that NCFE had used its two subsidiaries, NPF VI and NPF XII, to obtain and misappropriate investor funds; and that contrary to its representations, the notes issued by NCFE to investors were not adequately secured by healthcare accounts receivable.  The consistency across the informants' reports of wrongdoing lends credence to their allegations and is enough to support the magistrate judge's finding of probable cause.  *See Lancaster*, 145 F. App'x at 511.

Finally, at the hearing, Defendants argued that since the confidential informants' statements were based on just one to two days at NCFE, it is not possible that they could have reviewed sufficient information to draw the conclusions they drew. Other documents, and a more thorough review, claim Defendants, would have belied the informants' analysis. The fatal flaw in this reasoning is that Defendants mistake the probable cause standard that governs the issuance of search warrants for the beyond-a-reasonable-doubt standard the factfinder applies following a full trial on the merits.

      2. <u>Whether the Search Warrant Was Sufficiently Definite and Not Overbroad</u>

Defendants argue that the search warrant was impermissibly broad and failed to specify with the required particularity the items that were to be seized. Once again, Defendants' argument is unavailing.

"The Fourth Amendment to the United States Constitution directs that a search warrant must describe with particularity the place to be searched and the persons or items to be seized." *United States v. Lawson*, No. 05-5598, 2006 U.S. App. LEXIS 14201, *8 (6th Cir. June 5, 2006). The Sixth Circuit has said that "this requirement of specificity is flexible and varies with the crime involved and the types of items sought." *United States v. Campbell*, 256 F.3d 381, 389 (6th Cir. 2001). Thus, a description of the things to be seized is valid "if it is as specific as the circumstances and the nature of the activity under investigation permit." *United States v. Ables*, 167 F.3d 1021, 1033 (6th Cir. 1999). In cases involving allegations of a broad-based corporate fraud, courts have deemed valid search warrants calling for the seizure of all company records. *See United States v. Martinelli*, 454 F.3d 1300, 1308 (11th Cir. 2006) (holding that search warrant was sufficiently particular and seizure of all company documents was permissible where

the allegations pertained to a "pervasive scheme to defraud"); *United States v. Smith*, 424 F.3d 992, 1006 (9th Cir. 2005) (stating that "even an 'extraordinarily broad' warrant authorizing the seizure of essentially all business records may be justified when there is probable cause to believe that fraud permeated the entire business operation") (internal quotation marks and citation omitted); *United States v. Travers*, 233 F.3d 1327, 1330 (11th Cir. 2000) (noting that cases involving "complex financial fraud justify a more flexible reading of the Fourth Amendment particularity requirement"); *United States v. Frost*, 125 F.3d 346, 388 (6th Cir. 1997) (stating that the search warrant "appropriately authorized the extensive seizure of paper and computer documents in this complicated mail fraud case").

      There is no doubt that the search warrant here was broad, but that does not mean, as Defendants assert, that it lacked particularity. Agent Daly's affidavit alleged that NCFE was engaged in an all-out fraud, thus the warrant's authorization to seize "any and all records or information . . . relating to . . . account receivables, sellers of account receivables; investors; note holders; banking records; wire transfer records; and reports to investors, note holders or indenture trustees" was not beyond the scope of the purported criminal activity or insufficiently specific to alert those who were conducting the search as to what they were authorized to take. As this and other Circuits have recognized (see cases cited above), financial fraud cases necessarily give rise to a voluminous paper and electronic trail and therefore search warrants specifying virtually all corporate records—especially when the corporation itself and not just some piece of its operations is alleged to be a fraudulent enterprise—is appropriate. Thus, there is nothing alarming about Defendants' contention that "[n]one of the listed items include anything more than a generalized description of various types of records one would expect to

10

find in any corporate environment." Moreover, it makes no sense to analogize the search warrant in this case to cases involving drugs or theft, as Defendants do, because the items to be seized in those cases—drugs and jewelry, for instance—are amenable to a more precise description than are corporate records revealing fraud. Accordingly, there is no basis for invalidating the search warrant here on grounds that it lacked the necessary particularity.

### 3. Whether the FBI's Search Exceeded the Scope of the Warrant

Defendants also argue that the Government improperly seized documents that preceded the time frame specified in the search warrant. The search warrant itself does not set forth a particular time frame. Defendants, however, point to paragraph thirteen of Agent Daly's affidavit, in which he avers that based on Source 2's review of NCFE's records, Defendants had improperly transferred money between the NPF VI and NPV XII equity accounts "at least since June 2000 . . . ." Defendants thus seize on June 2000 as the start of the time frame specified by the search warrant (November 2002 being the end of the time frame). At the hearing on Defendants' motion, Agent Daly testified that no effort was made to confine the search of NCFE's premises to documents dated between June 2000 and November 2002. Defendants therefore argue that the search exceeded the scope of the warrant and that the fruits of the search should be suppressed.

The Court is not persuaded. Defendants implausibly attempt to graft a time frame onto the search warrant. As noted above, the warrant itself does not specify any time frame, nor was it required to do so. *See e.g., In re Grand Jury Subpoena*, 920 F.2d 235, 239 (4th Cir. 1990) ("[T]here is no flaw in the fact that the documents covered by the warrant did not have specific time periods attached."). Likewise, Agent Daly did not aver that the alleged fraud occurred

during a definite period of time.  The June 2000 date that Defendants latch onto was cited by Source 2 merely as the *latest* date on which one aspect of the alleged fraud scheme—the improper transfers between NPF VI and NPF XII—began, not the *earliest* possible date of the onset of the overall scheme.  Given this context, the Court declines to treat the reference to June 2000 in Agent Daly's affidavit as a limitation on the temporal scope of the warrant.

In addition, even if the search warrant and accompanying affidavit can fairly be construed as cabining the search to documents and things dated from June 2000 to November 2002, "seizure of documents outside the time frame of a warrant does not necessarily bar their admission into evidence."  *United States v. Maali*, 346 F. Supp.2d 1226, 1263-64 (M.D. Fla. 2004).  This is especially true in cases involving allegations of fraud and conspiracy, where precise dates demarcating the beginning and end of the fraud and/or conspiracy are not easily fixed.  *See e.g. In re Grand Jury Subpoena*, 920 F.2d at 239 (stating that "[t]he dates of specific documents could not have been known to the Government, and, as for income tax violations, documents from an earlier time may have bearing on the tax violations alleged in a later year"); *United States v. Slocum*, 708 F.2d 587, 603 (11th Cir. 1983) (stating that where there are allegations of ongoing fraud, "evidence of illegal activity in the past would be relevant to the conspiracy, while records of legitimate transactions prior to the conspiracy will help determine how and when the fraud scheme began").

The Court therefore rejects Defendants' argument that documents and things seized which pre-date June 2000 should be suppressed.

**B.  Defendants' Motion to Compel Disclosure of the Confidential Informants' Identities**

Defendants ask the Court to require the Government to divulge the identities of Source 1, Source 2, and Source 3.  Defendants contend that this information is necessary to enable them to perfect their challenge to Agent Daly's affidavit.  However, where the Court has already concluded that Defendants have not carried their burden of establishing that Agent Daly's affidavit lacked probable cause, there is no basis for granting Defendants' motion to compel.  Nor have Defendants otherwise shown that they satisfy the standard for obtaining this confidential information.

The Government has the privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957).  To overcome this privilege, a defendant must "show how disclosure of the informant would substantively assist his defense" or "that disclosure is essential to a fair trial."  *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992).  A defendant's "mere conjecture or supposition about the possible relevancy of the informant's testimony" is not enough to warrant disclosure.  *United States v. Sharp*, 778 F.2d 1182, 1187 (6th Cir. 1985).

Here, Defendants' brief in support of its motion does little more than recite the legal standards governing disclosure of informants' identities.  Defendants do not explain how the requested information will "substantively assist" their defense, or why disclosure "is essential" to ensuring that they get a fair trial.  Defendants also do not argue that the confidential informants here were participants in the alleged offenses, perhaps because the search warrant affidavit suggests that they were merely "tipsters."  *See United States v. Sales*, No. 05-2522, 2007 U.S. App. LEXIS 21869, *11-12 (6th Cir. Sept. 6, 2007) ("We usually deny disclosure

when the informer was not a participant, and instead 'was a mere tipster or introducer.'") (citation omitted).  The sum total of Defendants' plea is that they need the informants' identities to challenge the veracity of Agent Daly's affidavit.  Defendants' may not use their motion to compel as a means of undertaking a fishing expedition in the hopes of unearthing some unknown, but purportedly beneficial evidence, especially where they have failed to hurdle the requirement of showing that Agent Daly's affidavit lacks probable cause.  *See United States v. Wilbert*, No. 97-2222, 2000 U.S. App. LEXIS 565, *10-11 (6th Cir. June 12, 2000) (holding that where the defendant was not entitled to a *Franks* hearing, he was also not entitled to disclosure of the identity of a confidential informant who provided information used to secure a search warrant).

Accordingly, the Court **DENIES** Defendants' motion to compel.

## IV.  CONCLUSION

For all these reasons, the Court **DENIES** Defendants' motion to suppress the evidence seized at NCFE pursuant to the search warrant (docket no. 464), and **DENIES** Defendants' motion to compel (docket no. 471).

**IT IS SO ORDERED.**

    s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATE: January 30, 2007**