## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. CR2-06-129** |
| v. | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| LANCE K. POULSEN, | : | |
| | : | |
| **Defendant.** | : | |

### OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on Defendant Lance K. Poulsen's ("Defendant" or

"Poulsen") Motion for a Bill of Particulars (no. 661); Motion for Individualized Voir Dire (680);

Motion for Transfer for Unfairly Prejudicial Pretrial Publicity (no. 688); fifteen motions in limine

(nos. 681 and 682); and Motion to Strike Prejudicial Surplusage From the Indictment (no. 686).

Also before the Court is the Government's Motion to Preclude or Limit Expert Testimony of

Gregory H. Gac and Alexander J. Hoinsky, and for Adequate Disclosure (no. 801). The Court

will address Defendant's motions and then turn to the Government's motion.

### II. ANALYSIS

#### A. Defendant's Motions

##### 1. Defendant's Motion for a Bill of Particulars (no. 661):

Defendant moves for a bill of particulars, identifying six different subjects raised by the

indictment about which he claims to need additional information in order to prepare an adequate

defense. Specifically he seeks information:

(1) clarifying an alleged inconsistency in paragraphs 17.1 and 17.2 of the superseding indictment;

(2) regarding the "Fabricating Data in Investor Reports" claims in paragraphs 17.3.1 and 34;

(3) regarding the "Double Counting Money" claim in paragraph 17.3.2;

(4) regarding the "Making False Statements" claim in paragraph 17.3.3;

(5) regarding the "Loading of False Data" claim in paragraph 17.3.4; and

(6) regarding the Securities Fraud counts in paragraphs 43 and 44.

Whether to grant a motion for a bill of particulars lies within the discretion of the district court. *United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir. 1993). "The function of a bill of particulars is to minimize surprise and assist [the] defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes." *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004) (internal quotation marks omitted) (quoting *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993)). "A bill of particulars is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." *Id.* (internal quotation marks and citation omitted). In reviewing Defendant's motion for a bill of particulars, the Court is cognizant of the fact that (1) the government provided the Defendant with roughly 200,000 pages of discovery materials; (2) On July 11, 2008, Defendant Poulsen was granted a two month continuance to allow him to review documents produced by the Government; and (3) Poulsen's co-defendants were tried in February 2008 and Poulsen has had access to the trial transcript and the governments exhibits since that time.

First, the Defendant claims paragraphs 17.1 and 17.2 of the superseding indictment are internally inconsistent, and require clarification through a bill of particulars, because it is unclear

2

"whether the government's problem is that NCFE did not purchase Eligible Receivables, or that NCFE did not advance the funds for 'certain other authorized expenses.'" The court **DENIES** Defendant's request. The Court does not find those paragraphs to be internally inconsistent.[1] When read together those paragraphs clearly state:

> The defendants falsely promised the victims that their money would be used *only to purchase Eligible Receivables* and for certain other authorized expenses. *Instead*, the defendants advanced investor money to healthcare providers *without purchasing the Eligible Receivables*, while falsely claiming that the advances were in fact for the purchase of Eligible Receivables. (Emphasis added).

Thus, the superseding indictment provides the Defendant with sufficient information to apprise him of the nature of the fraud he is accused of committing and how he perpetrated that fraud.

Next, the Court finds that the remaining five of Defendant's six requests for more specific information are **MOOT** because the Government has provided the requested information in its response brief. With respect to Defendant's second request, the Court previously ordered (no. 508)[2] and the Government supplied to Defendant in a January 31, 2008 letter, the specific data underlying its claim that Poulsen approved the use of false data in an NPF VI investor report, paragraphs 17.3.1 and 34 of the superseding indictment. In that letter, the Government

---

[1] Moreover, Defendant could resolve any ambiguity by referencing the transcripts from the February trial of his co-defendants.

[2] In the Court's January 30, 2008 Order ruling on the Parties' motions in limine, (no. 508 at 5) the Court granted in part Defendants' motion for a bill of particulars. Specifically, the Court order the Government to identify the "false data" Poulsen approved for use in an NPF VI investor report. However, the Court stated "[i]n complying with the Court's order, the Government need not explain how the data are allegedly false . . . the Government need only identify which are the allegedly false data that Poulsen authorized for inclusion in the report." Consistent with its former ruling, the Court **DENIES** Defendant's second request to the extent that it seeks information regarding how the data are false.

pinpointed, via trial exhibit number and production number, both the specific data that it alleges
were false and the basis for its claim that Poulsen authorized the report.

Similarly, with respect to Defendant's third, fifth, and sixth requests, the Government
identified specific trial exhibits and testimony from the February 2008 trial of Poulsen's co-
defendants, which form the basis for the "Double Counting," "Loading False Data," and
"Securities Fraud" allegations in paragraphs 17.3.2, 17.3.4, 43, and 44 of the superseding
indictment.[3]

Finally, with respect to Defendant's fourth request, the Government has identified the
expert disclosures "describ[ing] the alleged representations made by Poulsen and others," which
form the basis of the "making false statements" allegation in paragraph 17.3.3 of the superseding
indictment.

---

[3] Double Counting claim: Defendant claims that he requires more information in support
of the Government's assertion that transferring funds between NPF VI and NPF XII "was
unequivocally improper." First, the Government explains that the Government's theory is not
that the transfers were themselves illegal, but that they were acts in furtherance of Defendant's
scheme to defraud investors. Further the Government identifies the specific trial testimony and
exhibits supporting this claim.

Loading False Data claim: Defendant claims he needs details to explain how Poulsen was
connected to the loading of false data, how such data was false, and how it was used to cover
"shortfalls." The Government explains Poulsen's connection to this claim in its Response stating
that the loading of false data by Parrett and Happ (Sup. Inidct. ¶¶ 41,42) constituted "alleged
overt acts committed by [Poulsen's] co-conspirators . . . in furtherance of a conspiracy in which
Poulsen is charged as a knowing participant." The Government also points to specific testimony
explaining both the false loading itself and Poulsen's connection to it.

Securities Fraud claims, Defendant claims that the securities fraud counts are so vague that he
cannot "infer how securities fraud occured with respect to each count." The trial testimony and
exhibits identified by the Government in its response lay out the factual basis of these claims and
include the specific notes that form the basis of the securities fraud claim.

2. Defendant's Motion for Individualized Voir Dire of Prospective Jurors (no. 680):

Defendant seeks to conduct individual and sequestered voir dire of all prospective jurors, arguing that it is necessary to ensure that he obtains an impartial jury and a fair trial. The Government counters that individual, sequestered voir dire is not warranted because the Court may employ jury questionnaires and limited individual questioning of prospective jurors to ensure that Defendant receives a fair trial by an impartial jury.

Adequate voir dire is central to ensuring that a defendant's Sixth Amendment right to an impartial jury is honored. *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981). However, even in cases involving extensive, negative pretrial publicity, there is no constitutionally proscribed voir dire process, including no requirement of individualized sequestered voir dire. *Mu'Min v. Virginia*, 500 U.S. 415, 424-32 (1991); *United States v. Blanton*, 719 F.2d 815, 822 (6th Cir. 1983) (en banc) (affirming district court's en mass voir dire even in light of massive negative pretrial publicity) . Instead, trial courts have broad discretion to determine the scope and manner of voir dire necessary to ensure that the defendant receives an impartial jury. *See*, *e.g.*, *Rosales-Lopez*, 451 U.S. at 189; *United States v. Guzman*, 450 F.3d 627, 629-30, 632 (6th Cir. 2006) (noting that uniformly requiring in camera voir dire of every potential juror would "cripple the trial process").

The Court believes that individual, sequestered voir dire of every venireperson is not necessary to ensure that Defendant receives an impartial jury and a fair trial.[4] The Court has

---

[4] Defendant relies on *United States v. Jamieson*, to support argument that individualized voir dire should be used in this case. 427 F.3d 394 (6th Cir. 2006). The Court has reviewed *Jamieson* and finds nothing in the opinion that compels this Court to employ individual sequestered voir dire for every prospective jurors, especially given this Court's use of a media exposure letter and juror questionnaire, described *infra*, to assist in the selection of impartial

5

already taken measures to identify jurors with potential prejudice based on media exposure and to minimize such exposure. Specifically, the prospective jury members have been sent (1) a letter instructing them to avoid media coverage of this case and (2) a detailed juror questionnaire that includes questions addressing the existence and extent of prospective jurors' media exposure and any opinions prospective jurors' may have formed about the case. The results of the questionnaire will allow the parties to identify specific jurors with significant media exposure without potentially tainting the rest of the venire. Therefore, Defendant's Motion for individualized, sequestered voir dire of every venireperson is **DENIED**.

Instead, the Court will follow the voir dire procedures it used in the February 2008 trial of Poulsen's co-defendants, including the use of juror questionnaires and generalized en mass voir dire regarding whether a juror is aware of pretrial publicity.[5] Because the Court recognizes that this case has generated substantial pretrial publicity and is sensitive to Defendant's concern that some prospective jurors may have formed opinions regarding his guilt, the Court will permit, as it did in the February 2008 trial, individual, sequestered questioning on a juror by juror basis as necessary to identify and root out potential prejudice.

3. Defendant's Motion for Transfer for Unfairly Prejudicial Pretrial Publicity (no. 688):

Defendant moves for a change of venue, arguing that the Columbus, Ohio jury pool has been, and will continue to be, so saturated with negative media coverage of Poulsen that he will

---

jurors.

[5] Follow up questions regarding what an individual juror heard about the case through the media will be reserved for individual voir dire at sidebar.

be unable to receive a fair trial before an impartial jury. The Government claims that Poulsen has failed to establish sufficient prejudice to require a change of venue.

Under Federal Rule of Criminal Procedure 21(a) a court is only *required* to grant a defendant's motion for transfer if "the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Prejudice requiring a change of venue can be presumptive or actual. *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007). Actual prejudice is demonstrated "when review of both the jury voir dire testimony and the extent and nature of the media coverage indicates a fair trial [is] impossible." *Ritchie v. Rogers*, 313 F.3d 948, 952 (6th Cir. 2002) (*quoting Murphy v. Florida*, 421 U.S. 794, 798 (1975)) (internal quotation marks omitted). "Presumptive prejudice from pretrial publicity occurs where an inflammatory, circus-like atmosphere pervades *both* the court-house and the surrounding community." *Foley*, 488 F.3d at 387 (emphasis added). The right to an impartial jury does not require that jurors lack any knowledge of the case or even preexisting opinions to the merits of the case as long as "the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. 717, 722-23 (1961); *see also DeLisle v. Rivers*, 161 F.3d 370, 382 (6th Cir. 1998) (en banc).

The Court acknowledges that there has been significant media coverage related to this case, some of it unflattering to Poulsen. The Court does not agree with Defendant's contention, however, that "nearly all" all of the coverage "vilif[ies] Mr. Poulsen specifically as the supposed mastermind behind the purported fraud". Instead, based on Its review of the media coverage cited by Defendant, the Court agrees with the Government that the coverage is primarily fact-based and not sensationalized. *DeLisle v. Rivers*, 161 F.3d at 385 (distinguishing the prejudicial

7

effect of publicity that amounts to a campaign to convict from "coverage that consists of straight news stories"(internal quotation marks omitted)). While Poulsen is mentioned in the articles cited in support of Defendant's Motion, he is only central to three of the nine stories, the most recent of which ran over seven months before his upcoming October 1, 2008 trial date. The news stories cannot be viewed as a campaign to convict Defendant Poulsen.

The circumstances of this case are a far cry from those in *Sheppard v. Maxwell,* upon which Defendant heavily relies, where not only was there "massive and pervasive" media coverage but "bedlam reigned at the courthouse during the trial and newsmen took over practically the entire courtroom, hounding most of the participants in the trial." 384 U.S. 333, 354-55 (1966). Therefore the Court finds that Defendant has failed to show presumptive prejudice. Moreover, the Court believes that the voir dire procedures it will employ at trial, discussed *supra* in Section A.2., will be more than sufficient to prevent actual prejudice. For these reasons, Defendant's Motion for Transfer is **DENIED**.

4. Defendant's Motion in Limine to Exclude Several Types of Evidence (no. 681):

Poulsen moves to exclude five categories of evidence from trial: (1) any reference to the trial, convictions, or guilty pleas of Poulsen's co-defendants; (2) any reference to Defendant's purported shoving of and yelling or screaming at NCFE's investor's and third parties; (3) any reference to or images of Poulsen's "former high-wealth lifestyle" or statements the Poulsen tried to "buy justice;" (4) any reference to the dollar amount purportedly lost by investors or third parties as a result of NCFE's bankruptcy; and (5) any reference to Poulsen's previous conviction in *United States v. Lance K. Poulsen*, No. 2:07-CR-209 (S.D. Ohio) (the "obstruction conviction"), or the facts underlying that case.

8

A. Reference to Poulsen's Co-defendant's Trial and Convictions:

Poulsen seeks to exclude any reference to the trial, conviction, or guilty pleas of any of his co-defendants from his trial. Poulsen argues that convictions and guilty pleas of co-defendants are never admissible as substantive evidence of a defendant's guilt and that if conviction evidence is introduced to impeach a testifying co-defendant, the Court should provide a limiting instruction that the conviction is only admitted so the jury can assess credibility.

The Court finds that Defendant's motion is **MOOT**. In its response to Defendant's motion, the Government assures Defendant and the Court that it does not intent to present "the fact that there was a prior trial or convictions of Poulsen's co-conspirators." The Government further represents that even if Poulsen "takes the stand and puts them at issue" the Government will seek leave of the Court before introducing this information.

B. Testimony Regarding Poulsen's Purported Yelling, Screaming, and Shoving:

Poulsen moves to exclude evidence—presented during his co-defendants' trial—that he yelled at, shoved, and threatened to slam doors in the face of NCFE investors in November 2002. Poulsen claims that this evidence is irrelevant and that it has the substantial capacity to unfairly prejudice the jury under Federal Rule of Evidence 403 because the jury "will form negative associations with yelling and shoving."

The Court does not find Poulsen's argument convincing. The "yelling and shoving" incident took place during a 2002 meeting between Poulsen and NCFE investors. During the meeting investors confronted Poulsen regarding the losses sustained on their investments. Poulsen's reaction included attempting to physically separate himself from the investors, yelling, threatening to slam doors, and ultimately ejecting them from the NCFE campus.

As the Government argues, this evidence is relevant because the jury could infer that Poulsen's extreme behavior at the meeting is evidence of a guilty state of mind. Moreover, the Court does not believe that the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury" based on jurors "negative associations" with yelling and shoving, as required for exclusion under Rule 403. For these reasons, the Court **DENIES** Poulsen's Motion.

C. <u>Images of Defendant's "Former High-Wealth lifestyle" or Statements That Defendant Tried to "Buy Justice:"</u>

Poulsen seeks to exclude, on Rule 403 grounds, any photographs of or reference to "the trappings of [his] relatively affluent lifestyle," specifically images of his yacht, mansion and private corporate jet. He claims that any relevance of this type of evidence is substantially outweighed by the risk of inflaming the jurors' class prejudices.

The Court finds Defendant's Motion **MOOT** insofar as the Government has stated that it will not offer "images of Poulsen's lifestyle" into evidence. The Government contends that it should still be permitted to present evidence regarding Poulsen's compensation, and ownership interests in certain healthcare providers. As long as the Government's questions do not violate any evidentiary rule, the Court will not altogether preclude references to Poulsen's compensation and ownership interests in healthcare providers at this stage. Rather, the Court will rule on appropriate objections at trial, if and when the subject arises.

Next, Poulsen seeks to preclude the Government from making any comments, in or out of the courtroom, suggesting that Poulsen tried to "buy justice." In support of this requests he points to comments made by the Government in a March 2008 Columbus *Dispatch* story

following Poulsen's obstruction of justice conviction. The Court will rule on appropriate

objections to this evidence at trial, if and when the subject arises.

      D.  Reference to Conjectural Loss Amounts:

Defendant moves to exclude any reference to the amount of loss suffered by investors as a

result of Defendant's alleged fraud as (1) irrelevant under Rule 401; and (2) too speculative to be

admitted under Rule 403. In support of his motion, Defendant generally attacks the evidence of

loss presented at his co-defendants trial as overly speculative without placing any specific loss

calculation before the Court. The Government responds that it does not intend to introduce any

evidence based on conjecture. It contends that any evidence of loss at trial will be supported by

NCFE's own documents or corroborated by witnesses. Based on the Government's

representations, the Court **DENIES** Defendant's Motion. Evidence of loss not based on

conjecture is probative and admissible.

      E.  Reference to Poulsen's Obstruction Trial and Conviction:

In March 2008, Poulsen was found guilty of conspiracy, witness tampering, and

obstruction of justice. Poulsen's conviction was based on his attempts to pay Sherry Gibson, a

former co-defendant who pleaded guilty for her favorable testimony. Defendant argues that: (1)

his obstruction conviction is inadmissible because final judgment is not yet entered; and (2) the

facts underlying his obstruction conviction are inadmissible under Federal Rule of Evidence

404(b) and 403.

As final judgment on Poulsen's obstruction conviction was entered on September 8,

2008, Defendant's first argument is **MOOT**. Furthermore, the Court finds that evidence of

11

Poulsen's obstruction conviction and its underlying facts are admissible under Rule 404(b).

Therefore Defendant's motion is **DENIED**.

> Rule 404(b) provides in relevant part:
>
>> Evidence of other crimes, wrongs, or acts is not admissible to
>> prove the character of a person in order to show action in
>> conformity therewith. It may, however be admissible for other
>> purposes, such as proof of motive, opportunity, intent, preparation,
>> plan, knowledge, identity, or absence of mistake or accident . . . .

While not explicitly listed in Rule 404(b), spoliation evidence, "including evidence that

defendant attempted to bribe and threatened a witness, is admissible to show consciousness of

guilt." *See. e.g., United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986) (collecting

cases) (holding evidence that a defendant threatened and attempted to bribe a witness admissible

under Rule 404(b)); 22 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal

Practice and Procedure §5240. Evidence of witness tampering is admissible as an "other

purpose" under Rule 404(b) because it "tends to establish consciousness of guilt without any

inference as to the character of the spoliator." *Id.* Therefore, evidence of Poulsen's obstruction

conviction and its underlying facts are admissible under Rule 404(b) because Poulsen's attempts

to bribe Gibson to testify favorably at his fraud trial is probative of his consciousness of guilt.

Poulsen argues that even if this evidence is permissible under Rule 404(b), it should be

excluded under Rule 403 because the jury will improperly conclude that Poulsen attempted to

bribe Gibson to testify in his favor because he believed he was guilty. Also, Poulsen argues that

he will be forced to re-litigate his obstruction case to rebut the Government's introduction of the

obstruction trial facts to demonstrate that he contacted Gibson to "confirm that she was telling

the truth." The Court disagrees.

12

First, the Court notes that Poulsen will not be permitted to re-litigate his obstruction conviction during his upcoming trial because he has been convicted of witness tampering and specifically of attempting to influence Gibson's testimony, after a full trial on the merits. 18 A. Wright & Miller, §4433 ("[P]reclusion effects of a criminal conviction are not defeated by the pendency of [appeal]."). Second, as discussed above, the Sixth Circuit has explained that the probative value of a defendant's spoliation attempt is precisely that it indicates consciousness of guilt. Therefore, any inference that Poulsen's attempt to bribe Gibson evidences a guilty conscience is not unfair prejudice. *United States v. Lawson*, 535 F.3d 434, 442 (6th Cir 2008) (Unfair prejudice in the Rule 403 context "does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest [a] decision in an improper basis."(quoting *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006)). Therefore the Court finds that the substantial probative value of this evidence is not substantially outweighed by the risk of unfair prejudice.

   5. Defendant's Motion to Join Certain of Co-Defendants' Pretrial Motions (no. 682):

Defendant requests to join ten of his co-defendants' pretrial motions in limine as listed in the chart below. The Court ruled on most of those motions in several pretrial orders prior to the February 2008 trial of Poulsen's co-defendants (nos. 508, 509).

| Dkt. No. | Co-Defendants' Motion | Ruling | Court Order Dkt No. |
|---|---|---|---|
| 448 | Defendant Dierker's Motion to Prevent the Government's Witnesses from Offering Opinions at Trial if Those Opinions are Based on Records Obtained from NCFE's Funding Department | DENIED | 508 |
| 461 | Motion to Suppress Testimony of Government Witnesses, Including Those Within the August 31, 2007 Disclosure, as it Pertains to the Use of Definitions, Applicable Terms, and Provisions of the Securities and Program Documents | Held in abeyance pending FPC 1/29/2008 Resolved informally by the parties | 488 |
| 462 | Motion to Suppress "Key Documents" from the Government's Rolling Discovery | Held in abeyance pending FPC 1/29/2008 Resolved informally by the parties | 488 |
| 464 | Motion to Suppress Evidence [recovered during the search] | DENIED | 509 |
| 466 | Motion to Exclude Evidence Concerning Anonymous Letters | MOOT | 508 |
| 467 | Motion to Exclude Victim Impact Evidence | MOOT | 508 |
| 469 | Motion to Exclude Witness Opinions About Fraud or Illegality | MOOT | 508 |
| 470 | Motion to Exclude Testimony Regarding Certain Hypothetical Questions | GRANTED | 508 |
| 471 | Motion to Compel Disclosure of Confidential Informants | DENIED | 509 |
| 472 | Motion to Exclude "Other Acts" Evidence Pursuant to Rule 404(b) | DENIED | 508 |

Poulsen advances no additional arguments in support of those motions but merely requests that the Court reconsider them in light of Poulsen's circumstances and "the insights yielded by the co-defendant's February and March 2008 trial." In response, the Government renews all the representations it made in its initial briefing of those ten motions and urges the Court to rule consistently with its prior rulings.

The Court has reviewed those motions and Its corresponding rulings and finds nothing in Poulsen's individual circumstances to warrant a different outcome. Moreover, Poulsen has not cited any change in controlling law related to those motions, nor is the Court aware of any. Therefore, to the extent Defendant requests to join his co-defendants' pretrial motions his request is **GRANTED**, to the extent he seeks a different ruling on those motions his request is **DENIED**.[6] The Court adopts is previous rulings and reasoning with respect to Poulsen for the ten motions listed above.

6. Defendant's Motion to Strike Prejudicial Surplusage From the Indictment (no. 686):

Defendant argues in his motion that several portions of the superseding indictment are prejudicial surplusage and should be stricken, or, in the alternative that the Court should present a summary of the offenses charged to the jury rather than allowing jurors to view the indictment in its entirety. Among other things, the Defendant requests that the Court strike the phrase "owned in whole or in part by Poulsen, Ayers, and Parrett" from the "Overt Acts" section of the indictment, specifically paragraphs 24-28, 31, and 33, because that phrase is redundant and its repetition is unfairly prejudicial.

A Court may strike surplusage from an indictment upon a defendant's motion. Fed. R. Crim. P. 7(d). The striking of surplusage is "permissive but not mandatory" and may be granted or denied in the discretion of the district court. *United States v. Kemper*, 503 F.2d 327, 329 (6th

_____

[6] To the extent that Poulsen has joined motions that were held in abeyance by the court and resolved informally between the parties (Motion to Suppress "Key Documents" from the Government's Rolling Discovery, Motion to Suppress Testimony of Government Witnesses, Including Those Within the August 31, 2007 Disclosure, as it Pertains to the Use of Definitions, Applicable Terms, and Provisions of the Securities and Program Documents)—the Court considers those motions **MOOT**.

15

Cir. 1974). A court may grant such a motion when an indictment contains "nonessential allegations that could prejudicially impress the jurors." *Id.*

At the February 2008 trial of Poulsen's co-defendants, the Court did not allow the jury to view the superseding indictment. Instead, It read a brief description of the case to the jury during opening instructions. The Court also read, but did not allow the jury to view, the "Overt Acts" section of the indictment. The Court will follow the same procedure at Poulsen's upcoming trial.

Therefore, Defendant's motion to strike surplusage is **DENIED** because (1) the jury will never view the indictment and (2) the Court does not believe that the inclusion of the phrase "owned in whole or in part by Poulsen, Ayers, and Parrett" during its *reading* of the Overt Acts section will in any manner prejudice the Defendant.

## B. Government's Motion

### 1. Motion to Preclude or Limit Expert Testimony of Gregory H. Gac and Alexander J. Hoinsky, and for Adequate Disclosure (no. 801):

The Government raises several objections to Defendant's proposed expert witnesses,

Gregory H. Gac and Alexander J. Hoinsky. For the reason's described below, the Court

**GRANTS in PART** and **DENIES in PART** the Government's motion.

*A. Gregory H. Gac*

The Government challenges the following seven categories of Gac's proposed testimony:

(1) showing that the collapse of NCFE and the NPF programs in 2002 was attributable to third party outsiders;

(2) that NPF VI was not in default;

(3) that the NPF programs should not have been put into bankruptcy and should not have been consolidated as this was against the terms of the indenture;

(4) interpretation of the draft audit submitted by Deloitte to NCFE in 2002;

(5) explanation of the inaccuracies and fallacies in the prior trial testimony of Sherry Gibson, Joyce Chester and Jessica Bily;

(6) reviewing the government demonstrative exhibits used in the first trial and commenting on the inaccuracies in the model presented in that presentation; and

(7) assessing the meaning and time of determination dates.

First, the Government argues that Gac's proposed testimony regarding inaccuracies in witness testimony and demonstrative exhibits used in the *previous* trial of his co-defendants (categories 5 and 6 above) is irrelevant. To the extent that Defendant proposes to introduce expert testimony criticizing testimony and exhibits from the *prior* trial of Poulsen's co-defendants the Court agrees such testimony is irrelevant to any matters at Poulsen's upcoming trial and the Government's motion is **GRANTED**.

The extent that Defendant seeks to introduce Gac's testimony to address the testimony of witnesses, as it relates to his expert opinions, and demonstrative exhibits used during his *own* trial, the Court **DENIES** the Government's motion to exclude such testimony. Therefore, the Government's motion to exclude Gac's testimony regarding categories 5 and 6 is **GRANTED in PART, DENIED in PART**.

Next, with regard to categories 1-4 and 7 above, the Government argues that Defendant has not adequately set forth Gac's opinions or the basis of those opinions. In his Response to the Government's motion, however, Defendant has supplemented Gac's expert disclosure with Gac's opinions, the basis thereof, and the documents relied upon regarding categories 1-3 and 7. Also, with regard to category 4, the interpretation of the 2002 Deloitte Draft Audit, Defendant

17

represents in his Response that he will not question Gac about this subject at trial. Therefore, the Government's objections to the adequacy of Defendant's disclosures regarding categories 1-4 and 7 are now **MOOT**.

Finally, the Court finds, with the exception of categories 5 and 6, Gac's testimony is relevant to the facts of this case under the broad standard for relevance embraced by the Federal Rules. *See* Fed. R. Evid. 401. Here, Gac's proposed testimony about why NCFE and the NPF programs collapsed; whether NPF VI was in default; how the failing NPF programs should have been handled under the terms of the indenture; and the interpretation of financial documents and terms all bear on the issues that inhere in this case, and all are relevant to the ultimate question before the jury, namely whether NCFE committed fraud in the sale and management of its bonds. Therefore, the Government's request to exclude those categories of testimony on relevancy grounds is **DENIED**.

### B. Alexander J. Hoinsky

The Government first argues that the Defendant has not complied with his expert-witness disclosure obligations under Federal Rule of Criminal Procedure 16 because Hoinsky has not adequately identified the documents he relied upon in forming his opinions. The Court agrees. Defendant's Notice Regarding Expert Disclosures states that Hoinsky "may opine the receivables that NPF VI and NPF XII purchased were allowable" based on his reading of "the governing documents and the receivables allegations and data." Hoinsky utterly fails to identify the specific documents or portions of documents on which he relied in forming that opinion. Therefore, the Court orders Defendant to produce written summaries that set forth each and every document that Hoinsky relied upon in forming the opinion that he will give at trial. Furthermore, Defendant

shall specify the Bates ranges for each document, the title of the document, and if the witness does not rely on the entire document, the relevant portions.

Next, the Government argues that Defendant's Rule 16 disclosures as to Hoinsky are inadequate because they have not sufficiently identified: Hoinsky's job history, including each place he worked and his attendant job responsibilities; the dates and audience of his purported speaking engagements; or case captions and court designations for cases in which Hoinsky claims he provided support services. In his Response, Defendant provides a more detailed curriculum vitae, which provides the requested detail regarding Hoinsky's employment history and the dates of Hoinsky's speaking engagements. However, the Defendant has still failed to disclose (1) the audience of Hoinsky's speaking engagements and (2) dates, case captions, and court designations for cases in which Hoinsky provided litigation support services. The Court believes the Government's request for that data is reasonable and not overly burdensome. Consequently, the Court orders Defendants to supplement its disclosure with those details no later than **Friday, September 26, 2008.**

### III. CONCLUSION

For the foregoing reasons, the Court finds that (1) Defendant's Motion for a Bill of Particulars (no. 661) is **DENIED IN PART and MOOT IN PART** (2) Defendant's Motion for Individualized Voir Dire of Prospective Jurors (no. 680) is **DENIED**; (3) Defendant's Motion for Transfer for Unfairly Prejudicial Pretrial Publicity (no. 688) is **DENIED**; (4) Defendant's Motion in Limine to Exclude Several Types of Evidence (no. 681) is **MOOT IN PART and DENIED IN PART**; (5) Defendant's Motion to Join Certain of Co-Defendants' Pretrial Motions (no. 682) is **GRANTED IN PART and DENIED IN PART**; and (6) Defendant's Motion to Strike

19

Prejudicial Surplusage From the Indictment (no. 686) is **DENIED**. The Government's Motion to Preclude or Limit Expert Testimony of Gregory H. Gac and Alexander J. Hoinsky is **GRANTED IN PART and DENIED IN PART**.

      **IT IS SO ORDERED.**

                                             **s/Algenon L. Marbley**
                                        **ALGENON L. MARBLEY**
                                        **United States District Court Judge**

**DATE: September 22, 2008**