**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**LANCE K. POULSEN,**

      **Petitioner,**

      **v.**

**UNITED STATES OF AMERICA,**

      **Respondent.**

        **CASE NO. 2:13-CV-259
CRIM. NO. 2:06-CR-129
JUDGE ALGENON L. MARBLEY
MAGISTRATE JUDGE ABEL**

**ORDER and
REPORT AND RECOMMENDATION**

On March 19, 2013, Petitioner Lance K. Poulsen, a federal prisoner, filed an *Amended Motion to Vacate, Set aside or Correct Sentence* under 28 U.S.C. § 2255 challenging his convictions for conspiracy to commit securities fraud, wire fraud, and money laundering. This matter is before the Magistrate Judge on Petitioner's July 19, 2013 *Motion for Partial Summary Judgment*, ECF 1239; Respondent's *Response in Opposition*, ECF 1247; and Petitioner's *Reply*, ECF 1264. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that Petitioner's *Motion for Partial Summary Judgment*, ECF 1239, is **DENIED.**

**Facts and Procedural History**

The United States Court of Appeals for the Sixth Circuit as follows summarized the facts and procedural history of the case as follows:

> This consolidated case, involving both a securities fraud conviction (the "Securities Case") and an obstruction of justice conviction (the "Obstruction Case"), chronicles the rise and fall of National Century Financial Enterprises, Inc. ("NCFE") and, with it, defendant-appellant Lance K. Poulsen ("Poulsen").
>
> The cases were tried separately. In the Obstruction Case (2:07–cr–209, No. 08–4218), Poulsen appeals his conviction and sentence for obstruction of justice, witness tampering, and conspiracy. The conduct at issue occurred while the Securities Case was pending,

but the Obstruction Case was tried first. In it, the district court sentenced Poulsen to 120 months in prison, three years of supervised release, a $17,500 fine, and special assessments. On appeal, Poulsen argues the district court erred in (1) denying his request to give an entrapment instruction; (2) denying his motion to suppress wiretap evidence; and (3) allowing into evidence the amount of loss for the purpose of Poulsen's sentence. We affirm the district court on each of these issues.

In the Securities Case (2:06–cr–129, No. 09–3658), Poulsen appeals his conviction and sentence for conspiracy to commit securities fraud, wire fraud, and money laundering. In May 2006, Poulsen and a number of co-defendants were indicted, with a superseding indictment returned in July 2007. On Poulsen's motion, the district court severed Poulsen's case from his co-defendants. The district court sentenced Poulsen to 360 months in prison to run concurrently with the sentence in the Obstruction Case. On appeal, Poulsen argues (1) the district court erred in denying his motion to transfer venue; (2) the district court improperly admitted evidence from the Obstruction Case; (3) the district court erred in allowing into evidence the amount of loss without also admitting evidence of other causes of that loss; and (4) his sentence was procedurally and substantively unreasonable. We affirm the district court on each of these issues.

I.

National Century Financial Enterprises, Inc. ("NCFE"), headquartered in Dublin, Ohio, was incorporated at the end of 1990 and became one of the largest healthcare finance companies in the United States. Defendant-appellant, Lance Poulsen was a co-founder of NCFE and served as its owner, chairman, and chief executive officer. Under NCFE's business model, NCFE primarily financed healthcare providers by purchasing their accounts receivable that were payable to private insurers and public healthcare programs. NCFE purchased specific accounts receivable from healthcare providers and issued bonds to investors that were backed by the accounts receivable as collateral. Subsidiaries of NCFE purchased those receivables with borrowed funds, monies obtained through securities that were backed by the receivables. NCFE and its representatives reported that those obligations were supported by adequate reserves and consistently maintained investment grade, primarily triple-A ratings. NCFE and its subsidiaries generated profits from fees charged to the healthcare providers for the advances as well as gains from the spread

between the discounted costs of the receivables and the collections on the receivables.

In reality NCFE used investors' money to advance funds to certain providers who did not submit any accounts receivable in return, including those owned in whole or in part by Poulsen and other principals of NCFE. Funds were advanced to providers without acquiring any receivables or in amounts in excess of the receivables purchased, when NCFE was required to purchase solely eligible accounts receivable. Poulsen was involved in advancing funds in this manner that violated the rules of the agreements in place with NCFE's investors; he approved numerous such advances and the majority of advanced funds were to six providers owned by Poulsen through his stakes in NCFE and other entities. Monthly reports were issued to indenture trustees to verify that minimum reserve account balances were met. In order to meet the minimum required reserve balances, NCFE devised a system to transfer funds between the reserve accounts to meet minimum reserve levels. Poulsen was active in the decisions to transfer money between the funding programs, to change the reporting dates, and to falsify figures in investor reports. The Presentence Report ("PSR") found that "[a]s one of the principals, Poulsen possessed the most knowledge of the ongoing criminal activity in this conspiracy."

In the spring of 2002, NCFE's auditing firm began to question discrepancies in several accounts, so it continued to request documentation and did not complete an audit report. In the fall of 2002, when NCFE attempted to shift funds between the programs, one of the trustee banks denied the transfer. The following week, at a meeting with Poulsen and others, investors first learned that NCFE insiders had been funding certain providers without acquiring accounts receivable in return. NCFE prepared an investor report in late October 2002 disclosing actual balances in its reserve accounts, and NCFE fund ratings for two of its subsidiary programs were downgraded from triple-A ratings to junk-bond status.

On November 8, 2002, Poulsen was forced to resign from his positions as director of NCFE's board and chief executive officer. Days later, the FBI searched NCFE's office, seizing computer and document records. On November 18, 2002, NCFE sought Chapter 11 protection in bankruptcy court.

On May 19, 2006, the first indictment in the Securities Case was returned against Poulsen, Rebecca S. Parrett, Donald H. Ayers,

Roger S. Faulkenberry, Randolph H. Speer, James Dierker, and Jon A. Beacham.

After the collapse of NCFE and Poulsen's initial indictment in the Securities Case, conversations between a friend of Poulsen, Karl Demmler, and a former employee of Poulsen, Sherry Gibson, formed the basis of the Obstruction Case. Karl Demmler was a close friend of Poulsen's from the mid–1980s when Poulsen first moved to Dublin, Ohio. Sherry Gibson was one of NCFE's first twelve employees, and she rose in the ranks at NCFE to executive vice president of compliance.

After the collapse of NCFE, in late 2003, Gibson pled guilty to conspiracy charges related to her employment at NCFE and faced an initial sentence of four years' imprisonment and forfeiture of $420,000. Her plea agreement, which listed Poulsen as an un-indicted co-conspirator, required her to meet with prosecutors and truthfully answer all questions about her own and others' involve-ement with NCFE. In light of her cooperation in the investigation, Gibson's sentence was shortened to thirty months.

While Gibson was incarcerated, she and Demmler stayed in contact. After Gibson was released from prison, she contacted Demmler on June 19, 2007, and they met. Demmler informed Gib-son that Poulsen intended to make her "whole." In this conversa-tion, Demmler also suggested that Gibson ask Poulsen to pay her for what she lost while incarcerated; Demmler suggested that they meet on a weekly basis; and Demmler stated that Poulsen asked him to contact Gibson to help him "win his case."

On June 20, 2007, Gibson contacted the FBI. From this point on, Gibson was working with the FBI. She was "given instructions on a continual basis about when to respond to a voicemail, when to initiate a telephone call, when to arrange a meeting," and she wore a concealed recording device when meeting with Demmler.

On July 10, 2007, while the FBI was still investigating the Ob-struction Case and over a year after the first indictment in the Securities Case, the government obtained the final, operative Sup-erseding Indictment, adding defendant James K. Happ. Poulsen was not yet arrested in either case at this time.

On July 13, 2007, Demmler and Gibson met again, and their con-versation was recorded. Demmler suggested that she not "change her story" at trial but rather conveniently forget things and "prevar-icate." On July 18, 2007, Demmler informed Gibson that he had

called Poulsen's cellular telephone and indicated that he had informed Poulsen about their conversations. On July 25, 2007, Demmler informed Gibson that Poulsen wanted to "sit down and talk to" her, but he wanted to do so under the right circumstances.

The FBI issued subpoenas for Demmler's telephone records. The telephone records revealed that Demmler and Poulsen had spoken more than thirty times between January and June of 2007. The FBI then obtained a pen register on Demmler's cellular telephone. On August 6, 2007, Special Agent Jeffrey Williams of the FBI submitted an affidavit in support of the application for the interception of wire communications from Demmler's cellular telephone. The wiretap was authorized on that same day.

From August 20, 2007, until October 18, 2007, the government monitored Poulsen's activity through the wiretap on Demmler's telephone, the recorded conversations between Gibson and Demmler, and Gibson's cooperation with the FBI. These conversations provided the following evidence: discussions between Poulsen and Demmler about getting Gibson a new attorney who was preapproved by Poulsen; multiple conversations between Poulsen and Demmler and Demmler and Gibson about how Gibson would be paid; instructions on how Gibson should answer prosecutors' questions and how she should testify; and Poulsen's and Demmler's concerns about discussing Gibson over the telephone.

On October 18, 2007, Demmler and Gibson met pursuant to an agreement that Gibson would drive Demmler to the airport because Demmler was planning a trip to Venezuela. At this meeting, Demmler gave Gibson a signed, blank check that she would eventually be able to use to procure her payment. Demmler was arrested that day at the Columbus airport. The same day, Poulsen was arrested in Florida in relation to his involvement in the Obstruction Case and has remained in custody since that date.

Poulsen was indicted for conspiracy to obstruct justice and to tamper with a witness in October 2007. A superseding indictment, returned in 2007, and a second superseding indictment, returned in 2008, added a count of substantive obstruction of justice and two counts of witness tampering.

Poulsen filed a number of motions in the Obstruction Case. Among these was a motion filed on January 10, 2008, to suppress electronic surveillance evidence. Poulsen argued the affidavit supporting telephone wiretaps failed to establish probable cause or necessity and argued the affidavit contained misleading statements

and omissions entitling Poulsen to a *Franks* hearing. The district court denied Poulsen's motion to suppress on March 17, 2008.

On March 10, 2008, Poulsen filed a motion in *limine* requesting an entrapment instruction. The district court denied this request at trial.

The government brought the Obstruction Case to trial first. On March 26, 2008, a jury found Poulsen guilty of conspiracy, in violation of 18 U.S.C. § 371; witness tampering, in violation of 18 U.S.C. § 1512(b)(2)(A); witness tampering by influencing testimony, in violation of 18 U.S.C. § 1512(b)(1); and obstruction of justice, in violation of 18 U.S.C. § 1503(a). In May 2008, Poulsen moved to continue and consolidate the sentencing proceedings in the Securities and Obstruction Cases, but this motion was denied. The district court sentenced Poulsen to 120 months in prison, three years of supervised release, a $17,500.00 fine, and the required special assessments. Poulsen appealed.

In the Securities Case, the district court granted Poulsen's motion for severance from the other defendants on January 4, 2008, and his trial began in October 2008.

Prior to trial, Poulsen filed a motion in *limine* to exclude several types of evidence in his Securities Case. Specifically, the motion sought to exclude evidence referencing the Obstruction Case or the underlying facts of that case as improper propensity evidence and as unfairly prejudicial. The motion was denied. At trial, evidence from the Obstruction Case was presented through the testimony of Sherry Gibson. Gibson testified for five days, two of which contained direct and cross examination on the facts of the Obstruction Case.

Poulsen also moved to exclude evidence of the dollar amount purportedly lost by investors or other third parties as a result of NCFE's bankruptcy, and this request was denied. Finally, Poulsen filed a motion to transfer venue in his Securities Case "because pretrial publicity has, and will, irreparably and unfairly prejudice any jury against Mr. Poulsen." The district court also denied this motion.

On October 31, 2008, a jury found Poulsen guilty of conspiracy, in violation of 18 U.S.C. § 374; securities fraud, in violation of 15 U.S.C. §§ 77q(a), 77x; wire fraud, in violation of 18 U.S.C. § 1343; conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956; and concealment money laundering in violation of

18 U.S.C. § 1956(a)(1)(B)(1). The PSR in Poulsen's Securities Case estimated the loss amount at $2,894,150,500. Poulsen filed a written objection to the PSR based on the government's failure to prove the specific loss amount at trial. At Poulsen's sentencing, the district court overruled Poulsen's objections and found that the loss amount estimated by the government in the PSR was a fair estimate. Poulsen was sentenced to 360 months in prison to run concurrently with the sentence in the Obstruction Case, three years of supervised release, and restitution in the amount of $2,384,147,105.09.

Poulsen's Obstruction and Securities Cases were consolidated on appeal.

II.

On appeal of the Obstruction Case, Poulsen argues (1) the district court erred in denying his request to give an entrapment instruction; (2) the district court erred in denying his motion to suppress wiretap evidence; (3) the district court erred in allowing into evidence the amount of loss for the purpose of calculating his sentence. We affirm the district court's decision on each of these issues.

*United States v. Poulsen* 655 F.3d at 492-501. On August 25, 2011, the United States Court of Appeals for the Sixth Circuit affirmed the judgment of this Court. *Id.* On March 19, 2012, the United States Supreme Court denied Petitioner's petition for a writ of *certiorari*. *Poulsen v. United States,* 132 S.Ct. 1772 (2012).

On March 19, 2013, Petitioner filed a motion to vacate sentence and an amended motion to vacate sentence.

**Claims for Relief**

Petitioner asserts that he is "legally innocent" of Counts 17 (conspiracy to commit money laundering) and 18-20 (money laundering).[1] i.e., charges involving money laundering, under the United States Supreme Court's decision in *Cuellar v. United States,* 553 U.S. 550 (2008), and that his convictions related to these offenses therefore violate his right to due process (claim

---

[1] The motion to vacate also alleges that Poulsen in legally innocent of a violation of Count 23 (money laundering), but that Count of the Indictment were dismissed by the United States. ECF 857.

one); that he was denied the effective assistance of counsel trial due to  his attorneys' failure

request dismissal of the money laundering charges based on *Cuellar* and "any other failings by

replacement counsel" (claim two); that he was denied due process and the right to counsel of

choice due to improper tactics of the prosecution including threatening defense attorneys and

others involved in the case with criminal prosecution and opposing Petitioner's reasonable

requests for continuance (claim three); and that he was denied a fair trial due to prosecutorial

misconduct (claim four).  *Amended Motion to Vacate or Set Aside Sentence Pursuant to 28*

*U.S.C. § 2255*, ECF 1225, PageID# 26037-39.

It is the position of the Respondent that Petitioner's claims are procedurally defaulted or

otherwise fail to provide a basis for federal habeas corpus relief.

**Motion for Partial Summary Judgment**

Petitioner has filed a *Motion for Partial Summary Judgment* pursuant to Rule 56 of the

Federal Rules of Civil Procedure[2] requesting the Court to vacate his money laundering con-

---

[2] Rule 56 of the Federal Rules of Civil Procedure provides:

(a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(b) Time to File a Motion. Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

(c) Procedures.

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.

(4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

(e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or

(4) issue any other appropriate order.

(f) Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may:

(1) grant summary judgment for a nonmovant;

(2) grant the motion on grounds not raised by a party; or

(3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

(g) Failing to Grant All the Requested Relief. If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case.

(h) Affidavit or Declaration Submitted in Bad Faith. If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court--after notice and a reasonable time to respond--may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

victions as invalid under *Cuellar*, 553, U.S. at 550, and based on what he contends were improper jury instructions that provided an overbroad definition of concealment money laundering in view of *Cuellar,* and thereby permitting the jury to convict on an invalid legal theory. *Motion for Partial Summary Judgment*, ECF 1239, PageID# 26196. Additionally, Petitioner asserts, as he does in his amended § 2255 petition, that he was denied the effective assistance of trial counsel based on his attorneys' failure to raise an issue under *Cuellar*, and that this claim establishes cause and prejudice for any procedural default. PageID# 26219-26. Petitioner opposes Respondent's contention that this Court need not consider his claims under the concurrent sentence doctrine. PageID# 26227-28. He argues that his money laundering convictions are so similar to those overturned by the United States Court of Appeals on the basis of *Cuellar*, that he, too, should be granted relief. PageID# 26198.

Respondent opposes Petitioner's *Motion for Partial Summary Judgment*. Respondent argues that Petitioner is improperly attempting to obtain relief via a Rule 6 motion for summary judgment. Respondent contends that the arguments Petitioner presents herein properly would be raised in a response to the *Return of Writ*. *Memorandum in Opposition to Motion for Partial Judgment*, ECF 1247, PageID# 26283-85. Respondent further argues that this Court may decline review of Petitioner's claims if a decision in Petitioner's favor would not affect the ultimate sentence. PageID# 26285. Respondent opposes Petitioner's request for partial summary judgment because Petitioner failed previously to raise his claim of improper jury instructions at trial, on direct appeal or in his timely filed § 2255 or amended § 2255 petition. It is the position of the Respondent that Petitioner thereby has procedurally defaulted this claim. PageID# 26286-87. Respondent argues that the facts presented at trial satisfy the law set forth in *Cuellar*. Respondent contends that, despite Petitioner's argument to the contrary, defense counsel raised a claim

under *Cuellar* post-trial.  Respondent further argues that defense counsel exercised reasonable

trial strategy.  PageID# 26288-91.  Respondent again argues that Petitioner cannot establish

prejudice in view of this Court's prior rejection of his claim and because, even assuming his

*Cuellar* claim is meritorious, Petitioner's ultimate sentence would remain the same.  PageID#

26290-91.

In response, Petitioner contends that he may properly pursue relief pursuant to a motion

for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Petitioner again

contends, as he does in his amended § 2255 petition, that the facts of his case mandate reversal of

his money laundering convictions under *Cuellar* in view of the holding of the United States

Court of Appeals for the Sixth Circuit in the co-defendants' cases.  *See United States v. Faulken-*

*berry*, 614 F.3d 573, 587 (6th Cir. 2010).  Petitioner argues that the government has failed to

meet its burden of showing a dispute of material facts and contends that, on the basis of the un-

contested facts, he is entitled to a partial summary judgment on his money laundering convict-

ions.  Petitioner proposes that these facts include as follows:

1.  The Superseding Indictment was founded on a legal theory that had
    been rejected by *Cuellar* months prior to Petitioner's trial;
2.  The Sixth Circuit reversed the money laundering convictions of
    several of the co-defendants in this case;
3.  The money laundering case against Petitioner was indistinguishable
    from the money laundering case against those co-defendants;
4.  Trial counsel overlooked and failed to raise *Cuellar* as a defense;
5.  The government tried its money laundering case against Petitioner and
    co-defendants on a legal premise repudiated by *Cuellar;*
6.  The parties failed to address *Cuellar* at any time in the District Court;
7.  The Court instructed the jury on a pre-*Cuellar* definition of
    concealment money laundering, permitting the jury to convict on an
    invalid legal theory.

Petitioner's *Reply Memorandum in Support of Motion for Partial Summary Judgment*, ECF

26477, PageID# 26479-26486.  Other material undisputed facts proposed by Petitioner include

the content of the briefs filed in the United States Court of Appeals; portions of the trial transcript; both parties' Rule 29 motion papers; this Court's *Opinion and Order* denying the Rule 29 motion; and the jury instructions.  PageID# 26486.  Petitioner asserts that he can establish cause and prejudice for any procedural default, as he does in his prior filings in this Court.   PageID# 26489-91.

The Court must first consider whether Petitioner's *Motion for Partial Summary Judgment* is properly before the Court.  Respondent argues that it is not. The Federal Rules of Civil Procedure may be used in habeas corpus "to the extent that they are not inconsistent with any statutory provisions or these rules . . . ." Rule 12, Rules Governing Section 2255 Proceedings. The Rules Governing Section 2255 Proceedings do not themselves provide for summary judgment. Rule 2 sets out the requirements for a motion to vacate sentence. Rule 5(a) provides for an answer, and Rule 5(d) permits the moving party to reply to the respondent's answer. Normally, motions to vacate sentence are decided on the record at trial, and the court will not consider any other evidence. 28 U.S.C. § 2254(d) and (e). The circumstances under which a petitioner may conduct discovery and under which the court will hold an evidentiary hearing are set out in Rule 6 and Rule 8, Rules Governing Section 2255 Proceedings.

In support of its position that summary judgment should not be permitted, Respondent cites *Linh Ky Duong v. United States*, Nos. 4:10-cv-300, 4:07-cr-2(1), 2011 WL 3903330 (E.D. Tex. March 28, 2011),[3] and *Fuller v. United States*, No. 10-cv-267-DRH, 2012 WL 2031979, at *2 (S.D. Ill. June 6, 2012).  *Memorandum in Opposition to Motion for Partial Judgment*, ECF 1247, PageID# 26284-85.

The Court in *Linh Ky Duong* denied a motion for summary judgment, stating,

---

[33] The District Court affirmed the *Report and Recommendation* in the citation referred to by Respondent, *Linh Ky Duong*, 2011 WL 3904134.

> Although Rule 12 permits the Court to apply the Federal Rules of Civil Procedure when appropriate, motions for summary judgment under Fed.R.Civ.P. 56 are not appropriate or necessary in the habeas context. This is especially true where the motion essentially seeks the same relief as that sought in the underlying motion to vacate. For these reasons, the Court should summarily deny the motion as improvidently filed in this action. *which was filed on the basis that the respondent had failed to file a response to the § 2255 petition.*

*Id*. at *1 (emphasis added).

The Court in *Fuller,* also denied a motion for summary judgment, in part based on the Petitioner's "repeated and flagrant disregard for this Court's Local Rules" and attempt to improperly advance arguments and supporting material he could otherwise not have done. *Id*. at *2. The *Fuller* Court nonetheless alternatively dismissed the motion for summary judgment on its merits. *Id*. at *2-3.

A habeas corpus petitioner cannot obtain relief through the filing of a motion for summary judgment based upon the respondent's untimely response or failure to file a *Return of Writ*. Under those circumstances, it is not appropriate to grant the motion for summary judgment, as it would be "tantamount to granting Petitioner a default judgment which is relief that is unavailable in habeas corpus proceedings." *Ruff v. Jackson,* No. 1:04–cv–014, 2005 WL 1652607, at *2 (S.D. Ohio June 29, 2005) (quoting *Alder v. Burt*, 240 F.Supp.2d 651, 677 (E.D.Mich. 2003) (internal citation omitted)). *See also Lemmons v. O'Sullivan,* 54 F.3d 357, 364–65 (7th Cir. 1985) ("Default judgment is an extreme sanction that is disfavored in habeas corpus cases."); *Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir.1990) ("The failure to respond to claims raised in a petition for habeas corpus does not entitle the petitioner to a default judgment."); *Aziz v. Leferve*, 830 F.2d 184, 187 (11th Cir. 1987) ("a default judgment is not contemplated in habeas corpus cases."); *Mahaday v. Cason*, 222 F.Supp.2d 918, 921 (E.D.Mich. 2002) ("A default judgment is

13

unavailable in a habeas corpus proceeding on the ground that state officials fail to file a timely response to the petition.").

There are cases permitting summary judgment to test whether a petitioner has petitioner can present sufficient facts that are not of record to support a claim. *See Franklin v. Mansfield Corr. Inst.*, No. 3:04–cv–187, 2006 U.S. Dist. LEXIS 51521, at *2, 2006 WL 2128939 (S.D. Ohio July 27, 2006) (citing *Blackledge v. Allison*, 431 U.S. 63, 80–81 (1977) and *Browder v. Director*, 434 U.S. 257, 266, n. 10 (1978)). While the Magistrate Judge is inclined to find that the circumstances here are not appropriate for summary judgment practice because the claim is that the record at trial demonstrates Petitioner's legal innocence of money laundering and Rule 5(b) and (d) provide a mechanism for adjudicating such claims, this Report and Recommendation will proceed to discuss the issues raised by the parties in their briefs on the motion for partial summary judgment.

**Statute of Limitations**

Although neither party has directly addressed the issue, this Court is not prohibited from *sua sponte* raising the issue here.  *Day v. McDonough*, 547 U.S. 198, 209 (2006)(district courts are permitted, but not required, to *sua sponte* address the timeliness of a habeas corpus petition).

 28 U.S.C. § 2255(f) imposes a one-year statute of limitations in federal habeas corpus proceedings:

> A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of-
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Petitioner filed his *Motion for Partial Summary Judgment* on July 19, 2013, which was after the one-year statute of limitations had already expired.[4] In his *Motion for Partial Summary Judgment,* Petitioner appears to include a claim that he was denied a fair trial and his money laundering convictions must be overturned due to improper jury instructions.  If so, Petitioner effectively seeks to amend his timely § 2255 petition with a new untimely, claim.  Moreover, Petitioner did not previously raise a claim regarding improper jury instructions at trial, on direct appeal, or in his amended habeas corpus petition.  *See Amended Motion to Vacate*, ECF 1225, PageID# 26211-18.  As a consequence, any claim that Petitioner was denied a fair trial due to an improper instruction for violation of Counts 17 through 20 of the Superseding Indictment is time-barred unless it "relates back" to the initial and timely-filed § 2255 petition under Rule 15 of the Federal Rules of Civil Procedure(c).[5]  *Mayle v. Felix*, 545 U.S. 644, 650, 656-57 (2005).

---

[4] The United States Supreme Court denied Petitioner's petition for a writ *of certiorari* on March 20, 2012.  ECF 1147.  The statute of limitations began to run the following day, and expired one year later, on March 21, 2013.

[5] Rule 15(c) of the Federal Rules of Civil Procedure provides in relevant part:

Relation Back of Amendments.

(1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or

New claims do not relate back to the initial filing merely because they arise out of the same trial and conviction. *Mayle,* 545 U.S. at 650.  The Supreme Court in *Mayle v. Felix* explained that amendments do not relate back if they assert "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.*  Pleading amendments do relate back to the date of the original pleading when the  amended claim arises "out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  Fed.R.Civ.P. 15(c)(1)(B).  "So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order."  *Mayle,* 545 U.S. at 664.  Such is not the case where the amended claim raises a new ground for relief supported by facts differing in time and type from those set forth in the original pleading set forth.

> FN7. For example, in *Mandacina v. United States*, 328 F.3d 995, 1000–1001 (C.A.8 2003), the original petition alleged violations of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), while the amended petition alleged the Government's failure to disclose a particular report. Both pleadings related to evidence obtained at the same time by the same police department. The Court of Appeals approved relation back. And in *Woodward v. Williams*, 263 F.3d 1135, 1142 (C.A.10 2001), the appeals court upheld relation back where the original petition challenged the trial court's admission of recanted statements, while the amended petition challenged the court's refusal to allow the defendant to show that the statements had been recanted. See also 3 J. Moore, et al., Moore's Federal Practice § 15.19[2], p. 15–82 (3d ed.2004) (relation back ordinarily allowed "when the new claim is based on the same facts as the original pleading and only changes the legal theory").

---

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i)     received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii)    knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

*Mayle*, 545 U.S. at 664 n.7. Other examples include as follows:

> *See Davenport v. United States*, 217 F.3d at 1341, 1346 (11th Cir. 2000) (stating that newly-offered claims of [ineffective assistance of counsel] do not relate back to timely-filed claims of [ineffective assistance of counsel] because they were based on different sets of facts); *United States v. Pittman*, 209 F.3d 314, 317–18 (4th Cir. 2000) (stating that claims regarding obstruction of justice enhancement and failure of counsel to file an appeal do not relate back to claims that the district court lacked jurisdiction to impose an enhanced sentence and the government failed to establish by a preponderance of the evidence that the drugs at issue were crack cocaine); *United States v. Duffus*, 174 F.3d 333, 337–38 (3rd Cir. 1999) (stating that a claim of [ineffective assistance of counsel] for failing to move to suppress evidence did not relate back to a claim of [ineffective assistance of counsel] for failing to contend on appeal that evidence was insufficient to support conviction); *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999) (stating that [ineffective assistance of counsel] claims alleged in a timely-filed petition were separate from other [ineffective assistance of counsel] claims because "[f]ailing to file an appeal is a separate occurrence in both time and type from a failure to pursue a downward departure or failure to object to the type of drugs at issue"). However, in contrast, if the new claim merely clarifies or amplifies a claim or theory already in the original petition, the new claim may relate back to the date of the original petition and avoid a time bar. *See Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001).

*Perry v. United States,* No. 2:08-cv-911; 2:02-cr-159, 2010 WL 5931970, at *3 (S.D. Ohio Dec. 21, 2010)(quoting *Schurz v. Schriro*, No. CV-97-580, 2006 WL 89933, at *3 (D.Ariz. Jan. 11, 2006)). Untimely claims of ineffective assistance of counsel based on the attorney's failure to show the defendant a videotape of the drug transaction and its effect on plea negotiations do not relate back to ineffective assistance of counsel for failing to prepare adequately for trial. *See McClean v. United States*, No. 04-13534, 2005 WL 2172198, at *2 (11th Cir. Sept. 8, 2005).

"[W]hile amendments that expand upon or clarify facts previously alleged will typically relate back, those that significantly alter the nature of a proceeding by injecting new and unanticipated

claims are treated far more cautiously."  *United States v. Hicks*, 283 F.3d 380, 388 (C.A.D.C
March 26, 2002).

In his timely § 2255 petition Petitioner asserts that he is "legally innocent" of his con-
victions involving money laundering under *Cuellar v. United States,* 553 U.S. at 550; that he was
denied the effective assistance of counsel trial based on his attorneys' failure to raise the issue
(claim two); that he was denied due process and the right to counsel of choice based on improper
tactics of the prosecution (claim three); and that he was denied a fair trial due to prosecutorial
misconduct (claim four).  *Amended Motion to Vacate or Set Aside Sentence Pursuant to 28
U.S.C. § 2255*, ECF 1225, PageID# 26037-39.  Petitioner asserts in his *Motion for Partial
Summary Judgment* a claim that he was denied a fair trial due to improper jury instructions in
relation to *Cuellar*.  This Magistrate Judge is not persuaded that the latter claim arises from the
same core of operative facts or merely expounds upon or clarifies a claim raised in the initial
pleading.  Consequently, the Magistrate Judge will not consider, in determining whether Peti-
tioner's *Motion for Partial Summary Judgment* is warranted, a claim regarding issuance of im-
proper jury instructions.

**Standard of Review**

Summary judgment is appropriate where "the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must
support the assertion by: citing to particular parts of materials in the record or "showing that the
materials cited do not establish the absence or presence of a genuine dispute, or that an adverse
party cannot produce admissible evidence to support the fact."  Fed.R.Civ.P. 56(c)(1)(A), (B).
The "party seeking summary judgment always bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp*. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (quoting Fed.R.Civ.P. 56(e)). The court views the facts and any inferences that can be drawn from them in the light most favorable to the nonmoving party. *Jeter v. Ahmed,* No. 1:13-cv-244, 2014 WL 1961919, at *1 (S.D. Ohio May 15, 2014)(quoting *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). The central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad,* 328 F.3d at 234–35 (quoting *Anderson,* 477 U.S. at 251–52). The Magistrate Judge will consider Petitioner's argument under this standard.

According to Petitioner, the undisputed facts warrant reversal of his money laundering convictions under *Cuellar* as a matter of law and as evidenced by the decision of the United States Court of Appeals for the Sixth Circuit overturning convictions of co-defendants which were based on the presentation of facts and a legal theory materially indistinguishable from this case.

A problem with this argument is that it appears that Petitioner's claim is waived. Claims that were or could have been raised on direct appeal, such as Petitioner's claim that the evidence fails to establish his guilt on the offenses charged, may not be raised in a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). Those claims are procedurally defaulted. A motion to vacate sentence under § 2255 may not serve as a substitute or a supplementary proceeding for a direct appeal. *See United*

19

*States v. Frady*, 456 U.S. 152, 165 (1982). A defaulted claim cannot be raised on a § 2255

motion unless a petitioner can demonstrate "cause" for each failure to raise the claim and "actual

prejudice" resulting from the error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *United States

v. Frady*, 465 U.S. 152, 164-65 (1982).

As cause for his procedural default, Petitioner asserts that his attorneys performed in a

constitutionally ineffective manner by failing to raise an issue under *Cuellar.  Petitioner's Reply

Memorandum in Support of Motion for Partial Summary Judgment*, ECF 1264, PageID# 26481.

Setting aside, for the moment, Respondent's argument that that is not the case (which itself

involves a disputed issue of material fact), the issue then becomes whether Petitioner can estab-

lish the denial of the constitutionally effective assistance of counsel under the two-prong test of

*Strickland v. Washington*, 466 U.S. 668 (1984), such that this Court may even address the merits

of Petitioner's *Cuellar* claim.  Making a determination of whether a petitioner can meet the test

set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), necessarily entails a fact-specific

inquiry.  And the facts material to such a determination are not undisputed by the parties.  For

example – the parties dispute whether the facts and legal theory underlying Petitioner's con-

viction are so similar to those of the defendants that his money laundering convictions must also

be reversed.  The parties dispute whether or not Petitioner can establish prejudice, as that term is

defined under *Strickland.*  The parties also dispute whether or not this Court already has address-

ed the issue underlying Petitioner's claim,[6] such that his claim is not properly addressed in a

motion to vacate, set aside or correct sentence under a 28 U.S.C. § 2255.

If the claim is not procedurally defaulted, then it is clear from the Sixth Circuit's deci-

ions in *United States v. Faulkenberry*, 614 F.3d 573, 585-87 (6th Cir. 2010); *United States v.*

---

[6] See, June 8, 2009 Order (doc. 990) denying Poulsen's motion for acquittal on Counts 17 through 20 of the superseding indictment.

*Ayers*, 2010 WL 2925939, **6 (6th Cir. July 28, 2010); *United States v. Dierker*, 2011 WL 1211538, **6 (6th Cir. April 1, 2011) that this Court must make a fact-specific inquiry as to whether the evidence at trial was sufficient to support the concealment money laundering convictions. Poulsen was tried separately. Further, Counts 18 through 20 of the indictment charged him, not the other defendants, with money laundering. The briefs on summary judgment do not go through the evidence at trial and make arguments about whether that evidence is sufficient to support convictions for concealment money laundering.

That being the case, the Magistrate Judge will address these same arguments raised by the Petitioner and the Respondent in the final decision on Petitioner's motion to vacate, set aside or correct sentence.

WHEREUPON, the Magistrate Judge **RECOMMENDS** that Petitioner's *Motion for Partial Summary Judgment,* ECF 1239, be **DENIED**.

s/Mark R. Abel
United States Magistrate Judge